[Cite as *State v. Tullis*, 2011-Ohio-6775.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 10CA3397 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| BRANDON TULLIS, | : | |
| | : | **RELEASED 12/19/11** |
| | : | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Gene Meadows, Portsmouth, Ohio, for appellant.

Mark E. Kuhn, Scioto County Prosecutor, and Joseph L. Hale, Scioto County Assistant Prosecutor, Portsmouth, Ohio, for appellee.

_____

Harsha, P.J.

**{¶1}** Claiming that the jury's verdict was against the manifest weight of the evidence, Brandon Tullis appeals his conviction for harassment by an inmate. Specifically, Tullis asserts that it was impossible for the jury to conclude that he committed the crime beyond a reasonable doubt because the victim did not testify that he saw Tullis spit on him and no DNA testing was done on the saliva to confirm whether it came from him. Nevertheless, because there was credible testimony presented at trial upon which the jury could have determined that Tullis spit on the victim, we hold that his conviction is not against the manifest weight of evidence.

I. FACTS

**{¶2}** On the date in question, Brandon Tullis was incarcerated at the Southern Ohio Correctional Facility. While conducting a check on the inmates in J-Block, Officer

Peters was spit upon.  Subsequently, the grand jury indicted Tullis with one count of harassment by an inmate, in violation of R.C. 2921.38(A).  His case proceeded to a jury trial.

{¶3}  At trial, Officer Peters testified that on the date in question, he was working at the Southern Ohio Correctional Facility.  After beginning his shift, he started his rounds alone and began walking past each cell in J-Block to check on the inmates inside.  Tullis was locked inside cell 58.  Peters testified that as he walked past cell 58, Tullis spit on the right side of his face and down the lapel of his uniform.  Officer Peters then "administered chemical agent" to Tullis' face and exited the cell block range.  He subsequently removed his uniform shirt and marked it with black marker to identify where the saliva had landed.  He then put the marked shirt in the evidence locker.

{¶4}  Officer Peters testified that he knew it was Tullis who spit on him because "as soon as he had spit, I stopped right there at the cell.  There was not any other inmates at their cell bars who could have even spit on me.  I turned around and he was standing right there and he was trying to do it again."

{¶5}  On cross examination, Officer Peters further testified that he was "very sure that it was Inmate Tullis who spit on me."  Defense counsel followed by asking Officer Peters about whether he saw Tullis spit on him:

{¶6}  "Q. Well my question is, did you see Inmate Tullis; Brandon Tullis, spit on you?

{¶7}  "A. Yes.

{¶8}  "Q. You saw him spit on you?

{¶9}  "A. Yes.

{¶10}  "Q. You saw the spit come from his mouth?

{¶11}  "Yes, because when you make a range check, you're actually looking to see if inmates are alive or breathing in the cells * * *."

{¶12}  Lieutenant Moore testified that the water in Tullis' cell was shut off on the day of the incident, and only turned on every two hours for 15 minutes.  After the incident with Officer Peters, Tullis made a statement to Lieutenant Moore, in which he said: "My cell in J-4 was messed up, I needed moved and my water was off.  I needed it back on.  They sprayed me for nothing.  I just wanted moved."

{¶13}  Rebecca Thomas, a forensic scientist with the Ohio Bureau of Criminal Investigations and Identifications, provided expert testimony concerning the saliva found on Officer Peters' shirt.  She testified that she was asked to test the shirt for amylase, a component of saliva.  She was able to identify amylase on the "right upper arm, shoulder area."

{¶14}  Thomas admitted that although it was possible to test amylase for DNA, she did not do it in this case.  She explained that if the test was requested, she would have performed it and a DNA test could have determined which human the saliva came from.  Moreover, she explained that a DNA test is a lot more complicated and it costs "in the thousands."

{¶15}  Lieutenant Eshem testified that there was no video of the incident between Officer Peters and Tullis.  Rather the cameras in the prison record still images every two seconds and the cameras did not capture Tullis spitting on Officer Peters.  No other witnesses testified that they saw Tullis spit on Officer Peters.

**{¶16}** The jury found Tullis guilty of harassment by an inmate. The trial court sentenced him to one year in prison, to run consecutively with his current prison term. This appeal followed.

## II. ASSIGNMENTS OF ERROR

**{¶17}** Tullis raises one assignment of error for our review:

**{¶18}** "THE VERDICT & DECISION OF THE TRIAL COURT IS [SIC] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE EVIDENCE FAILS TO PROVE BY PROOF BEYOND A REASONABLE DOUBT THAT THE DEFENDANT-APPELLANT, BRANDON TULLIS, COMMITTED THE CRIME ALLEGED HEREIN."

## III. MANIFEST WEIGHT OF THE EVIDENCE

**{¶19}** When considering whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Internal quotation marks omitted.) *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶193.

**{¶20}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See *State v. Issa* (2001)*,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904. "If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence." (Internal quotation marks omitted.) *State v. Tyler*,

4th Dist. No. 10CA3183, 2011-Ohio-3937, at ¶43.  Thus, we will exercise our discretionary power to grant a new trial "only in the exceptional case in which the evidence weighs heavily against the conviction." (Internal quotation marks omitted.) *Drummond*, supra, at ¶193.

**{¶21}**  Tullis argues that because Officer Peters testified he did not see Tullis spit on him, there were no other witnesses to the incident and there was no DNA testing performed, it is impossible to establish which inmate actually spit on Officer Peters. Consequently, he claims the verdict is against the manifest weight of the evidence.  We find his argument to be meritless.

**{¶22}**  Tullis was convicted of harassment by an inmate in violation of R.C. 2921.38(A), which provides: "No person who is confined in a detention facility, with intent to harass, annoy, threaten, or alarm another person, shall cause or attempt to cause the other person to come into contact with blood, semen, urine, feces, or another bodily substance by throwing the bodily substance at the other person, by expelling the bodily substance upon the other person, or in any other manner."

**{¶23}**  In the present case, there was testimony presented at trial upon which the jury could have reasonably found that Tullis spit on Officer Peters, with the intent to harass, annoy, threaten or alarm him.  Although Tullis claims that Officer Peters acknowledged that he did not see Tullis spit on him and he was not positive it was Tullis, after reviewing the record we find just the opposite.

**{¶24}**  At trial, Officer Peters testified that he actually saw Tullis spit on him and he was "very sure" it was him.  He further confirmed that he actually "saw the spit come from his mouth."  Also, Lieutenant Moore testified that Tullis wanted moved to another

cell that day because the water in his cell was turned off. Therefore, we find that the prosecution presented substantial evidence upon which the jury reasonably could conclude, beyond a reasonable doubt, that Tullis had committed the essential elements of the offense. And to the extent there are any slight inconsistencies in Peter's testimony, we leave credibility issues to the fact finder. *Issa*, supra.

{¶25} Moreover, the fact that the state did not test the saliva found on Officer Peters' shirt for DNA is not significant. There is no requirement that the state present DNA evidence to convict Tullis of harassment by an inmate. Thomas, an expert witness, testified that the stain on Officer Peters' shirt contained amylase, a component of saliva. She further testified that although a DNA test could have identified whether the saliva came from Tullis, the test is very costly. Given that eyewitness identification testimony alone is sufficient to support a conviction so long as a reasonable juror could find the eyewitness testimony credible, we find that the lack of DNA testing does not detract from the weight of the evidence. *State v. Humberto*, 10th Dist. No. 10AP-527, 2011-Ohio-3080, at ¶12.

{¶26} Therefore after reviewing the entire record, we cannot say that this is an exceptional case in which the evidence weighs heavily against the conviction. Accordingly, we overrule Tullis' assignment of error and affirm the judgment of the Scioto County Court of Common Pleas.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.



For the Court



BY: _____
        William H. Harsha, Presiding Judge



### **NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**