[Cite as *State v. Wiseman*, 2023-Ohio-4263.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. Patricia A. Delaney, P.J. |
| Plaintiff - Appellee | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Andrew J. King, J. |
| -vs- | : | | |
| | : | | |
| HOWARD L. WISEMAN, JR. | : | | Case No. 2023 CA 00004 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Fairfield County
                                 Court of Common Pleas, Case No.
                                 2022 CR 0134

JUDGMENT:                        Affirmed

DATE OF JUDGMENT:                November 27, 2023

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

R. KYLE WITT                              BRIAN A. SMITH
Fairfield County Prosecuting Attorney     123 South Miller Rd., Suite 250
                                          Fairlawn, Ohio 44333
By: MARK A. BALAZIK
Assistant Prosecuting Attorney
239 West Main Street, Suite 101
Lancaster, Ohio 43130

*Baldwin, J.*

**{¶1}** Appellant Howard L. Wiseman, Jr., appeals his conviction on four counts of drug possession and two counts of having weapons while under disability, as well as his sentence. Appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND THE CASE

**{¶2}** The appellant, who had a suspended driver's license, was stopped by law enforcement officers on March 29, 2022. The appellant consented to a search of the vehicle, during which officers found a variety of drugs and a number of weapons.

**{¶3}** On April 7, 2022, the appellant was indicted by the Fairfield County Grand Jury on the following offenses:

1. Count One, Aggravated Possession of Drugs in violation of R.C. 2925.11(A) and (C)(1)(c), a second-degree felony, with a firearm specification under R.C.2941.141(A) and three forfeiture specifications under R.C. 2941.1417(A);

2. Count Two, Possession of Cocaine in violation of R.C. 2925.11(A) and (C)(4)(d), a second-degree felony, with a firearm specification under R.C. 2941.141(A) and three forfeiture specifications under R.C. 2941.1417(A);

3. Count Three, Possession of a Fentanyl-Related Compound in violation of R.C. 2925.11(A) and (C)(11)(c), a third-degree felony, with a firearm specification under R.C. 2941.141(A) and three forfeiture specifications under R.C. 2941.1417(A);

4.      Count Four, Possession of L.S.D. in violation of R.C. 2925.11(A) and (C)(5)(b), a fourth-degree felony, with a firearm specification under R.C. 2941.141(A) and three forfeiture specifications under R.C. 2941.1417(A);

5.      Count Five, Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16(B) and (I), a fourth-degree felony, with a forfeiture specification under R.C. 2941.1417(A); and,

6.      Count Six, Having Weapons While Under Disability in violation of R.C. 2923.13(A)(2) and (B), a third-degree felony, with a forfeiture specification under R.C. 2941.1417(A).

{¶4}    The appellant was arraigned on April 13, 2022, at which time he pleaded not guilty.

{¶5}    On December 8, 2022, the grand jury returned a Superseding Indictment against the appellant which modified the offenses with which he was charged as follows: Count Two was modified to a fourth-degree felony, rather than a second-degree felony; Count Three was modified to a fourth-degree felony, rather than a third-degree felony; and, Count Five was modified to Having Weapons While Under Disability, a third-degree felony. The appellant was arraigned on the Superseding Indictment and, again, pleaded not guilty.

{¶6}    The case proceeded to a two-day jury trial on December 13, 2022, at which the following evidence was presented. Officer Adam Dilley testified that he performed a traffic stop of the appellant because he knew the appellant had a suspended license, and testified further that the registered owner of the vehicle had a warrant out for her arrest. The entire encounter was captured on the officers' body cameras.

{¶7} The appellant stated that he was heading home from work and that he had purchased the car from a woman named Missy Buehler, who was still listed as the registered owner. In addition to the pocketknife the appellant told officers he was carrying, additional weapons were observed in the vehicle, including a knife with a hilt resembling brass knuckles, and an item resembling a baton.

{¶8} The appellant consented to a search of the vehicle, during which officers found a backpack with four locks on it and a Hi-Point firearm. The appellant's story changed throughout the stop. He initially stated that he had no idea who the bag or the firearm belonged to, and that it had been left in the car. He then claimed that he had four or five girls in the car, one of whom may have left the backpack behind. However, the appellant later claimed that before the officers pulled him over a woman named Amanda Niebert and a man named "Touch" were in the car and that the bag was theirs. Officers detained and Mirandized the appellant, who admitted to having cocaine on his person. Officers found approximately one and one-half grams of cocaine and $639.00 on the appellant.

{¶9} During the stop the appellant repeatedly tried to make a deal, and asked the officers to call the drug task force so that he could speak with them. When asked about the contents of the bag, the appellant told officers "I don't know, but I'm pretty sure that I do know. You know what I mean?" The appellant told officers that the bag probably contained "about a quarter pound of meth," fentanyl, cocaine, and other drugs. Officers confirmed that the appellant accurately described what drugs were found in the bag, including the amount of methamphetamine.

{¶10} The appellant told officers that the keys to the locks on the bag containing the drugs were on the keyring of his car keys. When questioned about this, he claimed that "Amanda" had borrowed his car and put the keys to the bag on the keyring with his car keys. The appellant further stated that he was "quite sure" his fingerprints were on the gun because he had handled it previously. He also told officers that his DNA was probably on all the drugs located in the bag since he handled them and helped move them. When asked if drug trafficking information would be found on his phone, the appellant stated that "you will find lots of things" on his phone because he allowed other people to borrow it. Upon extraction of the phone, many text messages were recovered that implied drug trafficking over the past several days, including the night the appellant was arrested, with some of the messages asking for a person named "Buddy".[1]

{¶11} During an interview with Detectives Gary Bailey and John Ayette of the South Central Major Crimes Unit, some of the audio of which was played for the jury, the appellant admitted to still using drugs.[2]

{¶12} In addition, the appellant stated that he had trafficked drugs in the past, but had "quit" a couple months ago, which he later changed to "three to four weeks ago." The appellant attempted to negotiate a deal with detectives throughout the interview, at one point explicitly asking them "[w]hat do you need? What do you need here?"

{¶13} The jury heard testimony from Officers Adam Bailey and Brandon Eveland, who initially stopped the appellant's vehicle and thereafter searched it; Detectives Gary

---

[1] The appellant told officers during the stop that he was nicknamed "Buddy".

[2] The appellant objected to portions of the recording with MCU detectives regarding references to crimes with which he had not been charged, which were sustained by the trial court. As a result, those portions of the audio tape were not played for the jury.

Bailey and John Ayette of the South Central Major Crimes Unit, who interviewed the appellant; and, Lauren Gowins of the Ohio Bureau of Criminal Investigation, who analyzed the drugs found in the appellant's vehicle. The jury was presented with a number of exhibits, including bags of cocaine, methamphetamine, LSD, and a fentanyl-related compound; a box with a firearm, a magazine with ammunition, and shell casings; photographs of items discovered during the search of the appellant's vehicle; text messages extracted from the appellant's cell phone; and, video and audio recordings of both the officers' stop and the MCU interview of the appellant.

{¶14} The appellant objected to the foundation the appellee laid for admission of the audio recordings of the MCU interview, arguing that Detective Bailey could not properly authenticate the recording. The appellee argued that it could successfully lay a foundation upon which to admit the audio recordings. Specifically, Detective Bailey testified that he was present when the appellant was interviewed by the MCU, and testified that interview was recorded on a department issued cell phone and then downloaded to the department computer system.

{¶15} The trial court considered the jury instructions and verdict forms, with input counsel, on the record prior to instructing the jury. Counsel for the appellant argued that the appellee's request for an instruction on deliberate ignorance was misplaced and had the potential to confuse the jury. The appellee argued that the backpack which contained the contraband was located on the back floorboard of the appellant's vehicle, behind the passenger seat, within the appellant's reach. Further, the appellant professed ignorance that the backpack was there, but then also admitted to officers that he was aware of the precise types and amounts of drugs that were in the backpack, and that he had handled

the firearm that was found in the backpack, as well as the drugs. The trial court found that there were sufficient grounds to support the inclusion of a jury instruction on deliberate ignorance, which read as follows:

> **DELIBERATE IGNORANCE**. The element of knowledge may be satisfied by inferences drawn from proof that the Defendant deliberately closed his eyes to what would otherwise have been obvious to him. The Defendant is equally culpable whether he had positive knowledge or deliberate ignorance. It is up to you as to whether you find any deliberate closing of the eyes, and the inferences to be drawn from any such evidence.

**{¶16}** The matter was submitted to the jury for deliberation, and the appellant was found guilty on all charges.

**{¶17}** A sentencing hearing was conducted on January 11, 2023, and on January 19, 2023 the trial court issued a Judgment Entry of Sentence in which it sentenced the appellant to six to nine years on Count One, along with the mandatory one-year prison sentence on the firearm specification; twelve months on Count Two; twelve months on Count Three; twelve months on Count Four; and, eighteen months on Count Six.[3] Finally, the trial court ordered that the sentences be served consecutively, for a total aggregate sentence of eleven and one-half to fourteen and one-half years in prison. The trial court credited the appellant with 288 days served.

**{¶18}** In support of its decision that the sentences be served consecutively, the trial court reasoned that the appellant had been convicted of being in possession of a

---

[3] The trial court merged Counts Five and Six for purposes of sentencing.

significant amount and variety of dangerous drugs, of having five times the bulk amount of methamphetamine, of having between five and ten grams of cocaine, and between five and ten grams of a fentanyl related compound. The amount of drugs was much greater than an amount for personal use, and was indicative of trafficking. The court also found that the appellant has a long history of drug possession and trafficking. The court noted that the appellant had been convicted in 2003 of trafficking cocaine, convicted in 2006 on cocaine trafficking as a fifth-degree felony, convicted in 2009 for Aggravated Possession of Drugs, and convicted in 2020 on Aggravated Possession of Drugs. The appellant had also been convicted of a Sexual Battery in 1997, and convicted of Tampering with Evidence in 2013.

{¶19} The trial court reasoned that the appellant had been given many opportunities to change his behavior over the decades, and yet failed to do so. Thus, the court found that a significant amount of incarceration was required due to the appellant's involvement in drugs and the risk he presented to himself and others; and, that consecutive sentences were necessary in light of the record in the within case, the appellant's prior criminal history, the seriousness of the offenses, and the degree of danger the appellant posed to the public.

{¶20} The appellant filed a timely appeal, and sets forth the following five assignments of error:

{¶21} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶22} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING STATE'S EXHIBIT 8, SPECIFICALLY, THE PORTION OF STATE'S EXHIBIT 8

PURPORTING TO BE AN AUDIO/VIDEO RECORDING OF THE INTERVIEW BETWEEN APPELLANT AND DETECTIVE BAILEY, BECAUSE THE STATE FAILED TO LAY A PROPER FOUNDATION FOR ADMISSION OF THE RECORDING."

**{¶23}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN GIVING A "DELIBERATE IGNORANCE" INSTRUCTION TO THE JURY."

**{¶24}** "IV. THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS NOT SUPPORTED BY THE RECORD."

**{¶25}** "V. R.C. 2967.171, ALSO KNOWN AS THE "REAGAN TOKES ACT," WHICH ALLOWS THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION TO UNILATERALLY EXTEND APPELLANT'S SENTENCE, IS UNCONSTITUTIONAL UNDER BOTH THE UNITED STATES CONSTITUTION, ARTS. J, II, AND III, AND AMENDS. V, VI AND XIV, AND THE OHIO CONSTITUTION, ART. I, § 10, AND ART. IV, §§ 1 AND 3(B)(2)."

### ASSIGNMENT OF ERROR NUMBER I

**{¶26}** In his first assignment of error, the appellant argues that his convictions were against the manifest weight of the evidence. We disagree.

### STANDARD OF REVIEW

**{¶27}** Manifest weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. The Court stated:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the

issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387.

**{¶28}** The Court stated further:

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶29}** In addition, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

**{¶30}** "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

### ANALYSIS

**{¶31}** The appellant was tried on charges of aggravated possession of drugs, possession of cocaine, possession of a fentanyl-related compound, and possession of L.S.D. in violation of R.C. 2925.11 which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog," and specifically lists the aforementioned drugs. In addition, the appellant was tried on charges of having a weapon while under disability in violation of R.C. 2923.13, which provides that no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if the person has been convicted of any felony offense of violence.[4]

**{¶32}** The evidence presented in support of the convictions included the testimony of two City of Lancaster police officers, a forensic scientist from the Ohio Bureau of Criminal Investigation, and two detectives from the South Central Major Crimes Unit. In addition, the jury viewed the body-cam footage of the officers' interaction with the

---

[4] The appellant stipulated that he had been previously convicted of a felony offense.

appellant, and heard portions of the audio recording of the detectives' interview with the appellant.

**{¶33}** We find that, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that the appellant committed the essential elements possession of drugs, including cocaine, a fentanyl-related compound, and L.S.D., as well as having a weapon while under disability, and as such his convictions were not against the manifest weight of the evidence. Accordingly, the appellant's first assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER II

**{¶34}** The appellant argues in his second assignment of error that the trial court abused its discretion when it admitted State's Exhibit 8, specifically, the portion purporting to be an audio/video recording of the interview between the appellant and Detective Bailey of the South Central Major Crimes Unit, because the appellee failed to lay a proper foundation for admission of the recording. More specifically, the appellant argues that Detective Bailey did not properly authenticate the recording, thus rendering it inadmissible. We disagree.

### STANDARD OF REVIEW

"Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rule of procedure and evidence." *Rigby v. Lake Cty*, 58 Ohio St.3d 269, 271 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion

standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

*State v. Edwards*, 5th Dist. Stark No. 2020 CA 00149, 2021-Ohio-1917, at ¶34.

### ANALYSIS

{¶35} The authentication of evidence is governed by Evid.R. 901, which provides in pertinent part:

**(A)** **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

**(B)** **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of Witness With Knowledge.* Testimony that a matter is what it is claimed to be.

*        *        *

(5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

*        *        *

(7) *Public Records or Reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement or data compilation, in any form, is from the public office where items of this nature are kept.

*      *      *

(9) *Process or System.* Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

**{¶36}** The issue of admissibility of a recording was discussed by this Court in *Edwards*, *supra*, as follows:

> The threshold for authenticating evidence is low. *State v. Wiley*, 2d Dist. Darke No. 2011 CA 8, 2012-Ohio-512, ¶11. To be admissible, a tape recording must be authentic, accurate, and trustworthy. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶109, citing *State v. Rogan*, 94 Ohio App.3d 140, 148, 640 N.E.2d 535, 540 (2nd Dist.1994). There are two theories upon which sound recordings may be admissible under Evid.R. 901. *State v. Maurent*, 5th Dist. Delaware No. 12 CAA 05 0055, 2013-Ohio-3799, ¶50, citing *State v. Tyler*, 4th Dist. Ross No. 10CA3183, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶25-26. First, Evid.R. 901(B)(5) provides, "*Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electrical transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Second,

Evid.R. 901(B)(9) provides, "*Process or system.* Evidence describing a process or system used to produce a result and showing that process or system produces an accurate result." Therefore, "a sound recording may be authenticated through evidence that demonstrates a process or system used that produces an 'accurate result.' " *Maurent* at ¶50.

In *Maurent*, this Court found the trial court had sufficient foundational evidence to admit a telephone recording. At trial Detective Riehle testified he listened to original calls, created a recording of the call, and recognized defendant's voice on the jail call. *Maurent* at ¶51.

*Id.* at ¶¶ 36-37.

{¶37} In the case *sub judice*, Detective Bailey testified that he was present during the MCU interview of the appellant, was familiar with the voices on the interview recording, and identified the voices on the recording. He further testified regarding the contents of the conversation had during the interview. The MCU interview audio recordings were properly authenticated, and the appellant's second assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER III

{¶38} The appellant argues in his third assignment of error that the trial court abused its discretion in giving a "deliberate ignorance" instruction to the jury. We disagree.

### STANDARD OF REVIEW

A trial court has broad discretion to decide how to fashion jury instructions, but it must 'fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.' *State v. Price*, 162 Ohio St.3d 609,

2020-Ohio-4926, 166 N.E.3d 1155, ¶22. A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear the jury instructions constituted prejudicial error. *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, 2002 WL 727009, ¶ 4, *citing State v. Adams*, 62 Ohio St.2d 151, 154, 404 N.E.2d 144 (1980). In order to determine whether an erroneous jury instruction was prejudicial, a reviewing court must examine the jury instructions as a whole. *State v. Van Gundy*, 64 Ohio St.3d 230, 233-234, 594 N.E.2d 604 (1992). Pursuant to Crim. R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

*State v. Lazzerini*, 5th Dist. Stark No. 2019 CA 00142, 2021-Ohio-1998, ¶ 92, 173 N.E.3d 907, 931, *appeal not allowed*, 2021-Ohio-3336, ¶ 92, 164 Ohio St. 3d 1448, *reconsideration denied,* 2021-Ohio-4409, ¶ 92, 165 Ohio St. 3d 1490, and *cert. denied,* 142 S. Ct. 2677, 212 L. Ed. 2d 764 (2022).

{¶39} In this case, the appellant argues that the trial court erred when it instructed the jury on deliberate ignorance, an issue recently addressed by this Court in *Lazzerini, supra*:

The "deliberate ignorance" instruction was explained as follows by the United States Court of Appeals for the Sixth Circuit in *United States v. Mitchell*, 681 F.3d 867, 867-77 (6th Cir. 2012):

The disputed instruction, sometimes called the "ostrich instruction," is designed for a very specific situation. The instruction explains to the jury that knowledge, within the meaning of the statute, also

includes the deliberate avoidance of knowledge. It is appropriate when: (1) the defendant claims a lack of guilty knowledge; and (2) the facts and evidence support an inference of deliberate ignorance. Before giving the instruction, the district court therefore must determine that there is evidence to support an inference "that the defendant acted with reckless disregard of [the high probability of illegality] or with a conscious purpose to avoid learning the truth." *United States v. Seelig*, 622 F.2d 207, 213 (6th Cir. 1980) (internal quotation marks omitted); *see also [United States v.] Geisen*, 612 F.3d [471], 487-88 [(6th Cir. 2010)] (concluding that a deliberate ignorance instruction was appropriate where evidence established that the defendant "deliberately chose not to inform himself" of the critical facts); *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993) ("A deliberate ignorance instruction is appropriate only when there is evidence in the record showing the defendant purposely contrived to avoid learning the truth." (internal quotation marks omitted)). "Deliberate avoidance is not a standard less than knowledge; it is simply another way that knowledge may be proven." *United States v. Severson*, 569 F.3d 683, 689 (7th Cir. 2009). Deliberate ignorance "can be the result of a mental, as well as physical effort—a cutting off of one's normal curiosity by an effort of will." *United States v. Hoyos*, 3 F.3d 232, 237 (7th Cir. 1993) (internal quotation marks omitted). To permit a conviction without proof of

actual knowledge or deliberate, willful avoidance of that knowledge would simply erase the knowledge requirement from the statute. *See United States v. Heredia*, 483 F.3d 913, 926 (9th Cir. 2007) (en banc) (Kleinfeld, J., concurring). In short, "this instruction, like all instructions, should be given only when it addresses an issue reasonably raised by the evidence." *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988).

*Id.* at ¶101.

**{¶40}** The appellant argued, *inter alia*, that he did not know the backpack was in his vehicle. However, during the officers' search of the vehicle the appellant correctly identified the contents of the backpack, including the types and amounts of drugs contained therein. He also told officers that they would likely find his fingerprints on the backpack, as well as on the drugs and the weapon that was also found in the backpack. Furthermore, the backpack did, in fact, contain the drugs described by the appellant, as well as his fingerprints.

**{¶41}** Despite this evidence, the appellant continued to argue that the backpack was not his, and that he had no knowledge that it was in his vehicle. Because the appellant argued that he did not have knowledge that the backpack was in his vehicle, the trial court properly instructed the jury that it could consider whether he purposely contrived to avoid learning the truth of the presence of the backpack, thus providing the jury with another means to find that he had the "knowledge" necessary to satisfy all elements of the charges contained in the indictment. Accordingly, we find that the trial

court did not err in giving the deliberate ignorance instruction, and the appellant's third assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER IV

**{¶42}** The appellant argues in his fourth assignment of error that the trial court's imposition of consecutive sentences was not supported by the record. We disagree.

## STANDARD OF REVIEW

**{¶43}** The Ohio Supreme Court recently clarified the standard of review courts of appeal are to use in the review of consecutive sentences as follows:

The language of R.C. 2953.08(G)(2) mandates that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the negative.

This court has defined "clear and convincing evidence" as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

Therefore, an appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before

it may increase, reduce, or otherwise modify consecutive sentences. The statutory language does not require that the appellate court have a firm belief or conviction that the record supports the findings. This language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings. R.C. 2953.08(G)(2) also ensures that an appellate court does not simply substitute its judgment for that of a trial court.

*State v. Gwynne*, __ Ohio St.3d __, 2023-Ohio-3851, __N.E.3d __ , ¶¶13-15.

## ANALYSIS

**{¶44}** R.C. 2929.14(C)(4) provides:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a)    The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b)     At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶45}** A trial court must make the R.C. 2929.14(C)(4) findings at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings, nor must it recite certain talismanic words or phrases in order to be considered to have complied. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus.

**{¶46}** In this case, the trial court applied the elements of R.C. 2929.14(C)(4) in reaching its decision that the appellant's sentences for each count should be served consecutively, reasoning that the appellant had been convicted of being in possession of a significant amount and variety of dangerous drugs, of having five times the bulk amount of methamphetamine, of having between five and ten grams of cocaine, and between five and ten grams of a fentanyl related compound. The court also found that the appellant had a long history of drug possession and trafficking, and noted that the appellant had multiple prior convictions for trafficking cocaine, trafficking cocaine as a fifth-degree felony, aggravated possession of drugs, and tampering with evidence.

**{¶47}** In making the determination that the appellant's sentences should be served consecutively, the trial court found that the appellant had been given many opportunities to change his behavior over the decades, and had failed to do so. As such, the trial court found that consecutive sentences were necessary in light of the appellant's record, his prior criminal history, the seriousness of the offenses, and the degree of danger he posed to the public.

**{¶48}** Upon review of the sentencing transcript, we are not "left with a firm belief or conviction that the findings are not supported by the evidence," and the appellant's fourth assignment of error is therefore overruled.

## ASSIGNMENT OF ERROR NUMBER V

**{¶49}** The appellant argues in his fifth assignment of error that the Reagan Tokes Act violates the separation of powers doctrine and, as such, deprives him of due process, thus rendering the Act unconstitutional. We disagree.

**{¶50}** The Ohio Supreme Court recently held in *State v. Hacker*, __ Ohio St.3d __, 2023-Ohio-2535, __ N.E.3d __ that "[o]nce the trial court imposes minimum and maximum prison terms under R.C. 2929.14(A)(1)(a) or (2)(a), the sentence for the offender has been set. '[D]efendants who have been sentenced under the Reagan Tokes Law have received the entirety of their sentences and the sentences have been journalized.' *State v. Maddox*, 168 Ohio St.3d 292, 2022-Ohio-764, 198 N.E.3d 797, ¶ 16. If the DRC determines that the presumption of release has been rebutted, it may maintain the offender's incarceration — but only within the bounds set by the trial court. It does not impede the court's exercise of its judicial powers." *Id.* at ¶16.

**{¶51}** In this case, the trial court sentenced the appellant to an aggregate sentence of eleven and one-half to fourteen and one-half years in prison. This was the entirety of his sentence. The Department of Rehabilitation and Correction may, within the parameters established by the legislature, determine whether the presumption of release has been rebutted, and if so may maintain the appellant's incarceration. It does not, however, have the power to increase the appellant's sentence beyond that which has already been imposed by the trial court. Accordingly, the appellant's fifth assignment of error is overruled.

## CONCLUSION

**{¶52}** Based upon the foregoing, the appellant's Assignments of Error Numbers I through V are overruled, and the judgment of the Fairfield County Court of Common Pleas is hereby affirmed.

By: Baldwin, J.

Delaney, P.J. and

King, J. concur.