[Cite as *State v. Davis*, 2024-Ohio-2400.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 9-23-50

    v.

BRANDON KYLE DAVIS,              **O P I N I O N**

    DEFENDANT-APPELLANT.

---

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 2021CR0486**

**Judgment Affirmed**

**Date of Decision:  June 24, 2024**

---

**APPEARANCES:**

    *April F. Campbell* **for Appellant**

    *Allison M. Kesler* **for Appellee**

**WALDICK, J.**

{¶1} Defendant-appellant, Brandon K. Davis ("Davis"), brings this appeal from the July 7, 2023 judgment of the Marion County Common Pleas Court sentencing him to community control after he was convicted by a jury of Receiving Stolen Property ("RSP"). On appeal, Davis argues that there was insufficient evidence presented to convict him, that his conviction was against the manifest weight of the evidence, that he received ineffective assistance of trial counsel, and that the trial court erred by providing a supplemental jury instruction regarding the mental culpability element of "knowingly." For the reasons that follow, we affirm the judgment of the trial court.

*Background*

{¶2} On November 3, 2021, Davis was indicted for two counts of RSP in violation of R.C. 2913.51, both felonies of the fourth degree. One count related to Davis possessing stolen firearms and another count related to his possession of stolen video games and video game equipment. Davis pled not guilty to the charges.

{¶3} Davis proceeded to a jury trial on May 6-7, 2023. Following the presentation of evidence, the jury convicted Davis of a lesser-included offense of RSP related to the video games and equipment in an amount between $1,000 and $7,500, but acquitted Davis of the RSP related to the firearms. For his fifth degree felony RSP conviction, Davis was sentenced to two years of community control. A

judgment entry memorializing his sentence was filed July 7, 2023. It is from this judgment that Davis appeals, asserting the following assignments of error for our review.

**First Assignment of Error**

**The trial court reversibly erred in instructing the jury on deliberate ignorance because it lessoned [sic] the burden for the State to prove the mens rea for receiving stolen property.**

**Second Assignment of Error**

**The State's evidence that Davis had knowledge or reasonable cause to believe, as well as the value of the property Davis received, was legally insufficient.**

**Third Assignment of Error**

**The evidence also weighed manifestly against convicting Davis.**

**Fourth Assignment of Error**

**Davis's conviction should be reversed because his trial counsel was ineffective in a manner that prejudiced Davis.**

**{¶4}** For ease of discussion, we elect to address the assignments of error out of the order in which they were raised.

*Second Assignment of Error*

**{¶5}** In his second assignment of error, Davis argues that there was insufficient evidence presented to convict him of RSP. Specifically, he argues that the State failed to establish that the value of the property exceeded $1,000 and he argues that the State failed to establish that he acted knowingly.

Standard of Review

{¶6} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

Controlling Statute

{¶7} Davis was convicted of RSP in violation of R.C. 2913.51(A)/(C), which reads:

> (A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.
>
> * * *
>
> (C) Whoever violates this section is guilty of receiving stolen property. * * * If the value of the property involved is one thousand dollars or more and is less than seven thousand five hundred dollars * * * receiving stolen property is a felony of the fifth degree.

The culpable mental state for RSP, knowingly, is defined in R.C. 2901.22(B) as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

### Evidence Presented by the State

{¶8} In October of 2021, Joseph A. and his brother Zach owned and operated a store in Marion that sold video games, video game systems, and other collectibles. When Joseph went to the store on October 8, 2021, he found it "destroyed" with his merchandise missing. Games and items had been taken from the store, "graffiti [was] everywhere," and "black paint [was] dumped on everything." (Tr. at 100). Joseph testified that over $10,000 in merchandise was stolen from the store. He provided inventory sheets for the items taken and the prices the items were selling for.

{¶9} After the burglary and vandalism, Joseph posted on social media that he would provide a reward for assistance in having his items returned. Shortly thereafter he was contacted by his cousin, Cody, who indicated that he knew where the stolen items were.

{¶10} Cody had been in contact with Davis on social media and Davis was privately offering a significant amount of video games for sale. Cody had the following conversation on Facebook messenger with an account belonging to Davis:

[Brandon Back Up[1]]:Yoo who fw video games cuz I got hella shit must go for the low everything I got everything no cap..
Dumb shit

[Cody]: How low and what you got

[Brandon Back Up]: Hold up finna call you here in sec

[Cody]: My phone finna die 4 percent cuz

[Brandon Back Up]: Ight I'll hit you whenever then g

[Cody]: Ima put it on charge is what I'm saying but if I don't answer I'll call right back

[Brandon Back Up]: Ight bet

[Cody]: I'll buy it frfr
Game systems for days lol
[Cody sends a 7 second video but the record only contains a screenshot of the video sent].
Ay call me lol I'll buy that shit fam bring it

[An icon indicates that at 00:13 there was a 3 minute video chat between "Brandon Back Up" and Cody.]

[The next communication is from Cody, time-stamped at 01:55].

[Cody]: Shoot me a pic so I can show my dad I gotta get a loan lol I ain't coming with no small bag lol

[Brandon Back Up]: I got some little shit pictures rn but I got so much lmao

---

[1] "Brandon Back Up" is the name of the account.

[Three pictures are sent showing some stacked games, a classic Nintendo and some other items].
There's some. Yeah it's a good business move for sure. I just can't sell shit here for reasons [smiling devil emoji] lmfao

[Cody]: What we talking how much bread we thinking I can grab a couple gs

[Brandon Back Up]:I mean shit man there's even more like I can place order through dude and mail shit to you cash on delivery whatever you want my guy. I probably got 4 bands worth of shit. But the prices will get better however much you shop no kizzy

[Cody]: You know I shop lol

[Brandon Back Up]: [fax machine emoji] bro and you know I won't tax ya lol
Good deals just bc man everything gotta go lmao it's gonna take months to get rid of the volume we have rn

(word usage, spelling, and punctuation in the original) (State's Ex. 43).

{¶11} Joseph contacted the police and a search warrant was obtained for Davis's residence. As the warrant was being prepared, an officer made contact with Davis and told him that it was suspected there were stolen video games on the property. Davis responded that he did not even own a video game console, indicating there were no video games inside. An officer told Davis that they believed he had stolen merchandise in his basement, but Davis told the officers that he did not want to go down to his basement and he did not have anything stolen.

{¶12} Shortly thereafter the search warrant was executed at Davis's residence. Law enforcement officers located approximately 160 video games in the basement in addition to gaming consoles, controllers, and other items. Most of the

games were wrapped in plastic and some could even be seen with yellow pricing stickers.

**{¶13}** During the search of the residence, law enforcement officers also located two firearms that had been reported stolen from a residence in Wyandot County. The two stolen firearms were amongst numerous other firearms that Davis owned that were not stolen. The two stolen firearms were the subject of one of the RSP charges in the indictment; however, Davis was acquitted of that charge, so we will not address the firearms further.

**{¶14}** Davis voluntarily spoke with law enforcement officers and he claimed that the items in his basement had been brought in the night prior by his friend, Brandon Spears, and another individual named Matthew. Davis claimed that he had prior conversations with Brandon Spears about purchasing pallets of goods from wholesalers and reselling the items in the pallets individually. Davis stated that he did not look at the items Brandon put in his basement. He also stated that while the "Brandon Back Up" Facebook account was his, it was not Davis that sent the messages offering to sell the games to Cody.

**{¶15}** A few days after the search warrant was executed, Davis voluntarily contacted the police and indicated he had a few more items that he believed were part of the stolen goods. Ultimately the gaming items collected from Davis's residence were returned to Joseph. Joseph testified that of the $10,000 or more of

merchandise that was stolen from his business, he received back $6,000-7,000 in goods.

Analysis

{¶16} In arguing that the evidence presented at trial was insufficient to convict him of RSP, Davis focuses on two elements. First, he argues that the State failed to establish that the value of the items exceeded $1,000. Second, he argues that the State failed to prove that he acted knowingly.

{¶17} With regard to the value of the property, the prosecutor specifically asked Joseph the value of numerous individual games that were recovered from Davis's residence. Although there were no individual items that exceeded $1,000, the items that Joseph testified to readily exceeded $1,000 in value in the aggregate.

{¶18} Moreover, the message from the Facebook account of "Brandon Back Up" attempting to sell the gaming equipment represented that there was "4 bands worth of shit." An officer explained that a "band" is a known term for $1,000. Thus the person attempting to sell the items valued them well in excess of $1,000.

{¶19} Furthermore, the State presented an inventory of the items taken from Joseph and they added up to well over $1,000. Based on all of this evidence, we do not find that there was insufficient evidence presented for the jury to determine beyond a reasonable doubt that the value of the property exceeded $1,000.

{¶20} Davis next argues that the State did not establish that he acted knowingly. However, the items were found in Davis's basement. By Davis's own

admission they were brought in late at night. Shortly thereafter, there were messages from a Facebook account that Davis admitted was his offering to sell a significant amount of video games. The messages specifically stated that he could not openly sell the items on Facebook for "reasons," with a smiling devil emoji attached. In addition, when the police asked Davis about stolen video games, he claimed he did not have any video games or any consoles. This is all evidence from which a jury could determine that Davis acted knowingly.

**{¶21}** Although Davis contends that there was no evidence he knew that the items were stolen, particularly since he had talked about a "pallet" business with Brandon Spears, the credibility of Davis's story is a question for weight of the evidence rather than sufficiency. *See State v. Emery*, 6th Dist. Lucas No. L-11-1228, 2013-Ohio-208, ¶ 18 (" '[i]n a prosecution for receiving stolen property, the jury may infer guilty knowledge when the defendant's possession of recently stolen property either goes unexplained *or is not satisfactorily explained in the context of the surrounding circumstances, as shown by the evidence*.") (Emphasis added.)

**{¶22}** Here we must look at the evidence in the light most favorable to the State. Applying that standard, we find that sufficient evidence was presented to establish that Davis acted knowingly. Therefore, Davis's second assignment of error is overruled.

*Third Assignment of Error*

{¶23} In his third assignment of error, Davis argues that even if there was sufficient evidence presented to convict him of RSP, his conviction was against the manifest weight of the evidence.

### Standard of Review

{¶24} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

{¶25} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### Evidence Presented by the Defense

**{¶26}** Brandon Spears testified on Davis's behalf. He claimed that he was involved with the theft and vandalism of Joseph's store. At the time of the incident Brandon testified that he was regularly using methamphetamine and crack cocaine, and that he had a life-long history of committing crimes.

**{¶27}** Brandon testified that he was friends with Davis and that they had discussions in the past about reselling liquidated pallets together. Brandon testified that he took the items from Joseph's store to Davis's residence but Davis did not know that they were stolen.

**{¶28}** Brandon testified he had recently been released from incarceration for his involvement in this matter. He testified he was not receiving any incentive for testifying; rather, he claimed he was trying to clear his conscience. However, he acknowledged on cross-examination that he had never split a pallet with Davis before.

**{¶29}** Davis testified on his own behalf in this case. He testified that Brandon Spears had stopped at his residence in the weeks prior to dropping off the video games and showed Davis various items in his trunk that had purportedly come from a liquidated pallet. On October 8, 2021, Davis testified that Brandon knocked on his door and said he had pallet items. Davis testified that he did not know what items Brandon had brought over until he looked in the "totes" the next day.

{¶30} Davis acknowledged that he tried to sell items to Cody, but he claimed that he was not the individual that messaged Cody from his Facebook account. Davis claimed that Brandon Spears must have sent the messages.

{¶31} Davis did acknowledge that he lied when he told police that he did not know what was in the "totes" downstairs. He stated he was nervous. He also testified that he told police he did not have stolen property because he felt he only had legitimate property. Davis was emphatic that he did not know the items were stolen and that he would not have dealt with stolen goods.

Analysis

{¶32} For the same reasons Davis argued that there was insufficient evidence to convict him he contends that his conviction for RSP was against the weight of the evidence.

{¶33} With regard to the value of the property taken, again we find there was a significant amount of testimony and evidence regarding the value of the property taken exceeding $1,000. In fact, there is no evidence to the contrary. Thus we do not find that the jury clearly lost its way on this issue.

{¶34} Turning to Davis's claim that the jury clearly lost its way by finding that he acted knowingly, this case turns heavily on the jury's credibility determinations of Davis and Brandon Spears. The jury evidently did not find their stories credible and we "accord great deference to the factfinder's determination of witness credibility." *State v. Lawson*, 10th Dist. Franklin No. 19AP-68, 2020-Ohio-

3008, ¶ 28. Moreover, disagreement over the credibility of witnesses is not a sufficient reason to reverse a conviction on manifest weight grounds. *Id.*

**{¶35}** As the jury could readily determine that Davis was not credible, we do not find that the jury clearly lost its way by convicting him of RSP. Therefore, his third assignment of error is overruled.

*First Assignment of Error*

**{¶36}** In his first assignment of error, Davis argues that the trial court erred by providing a jury instruction on "deliberate ignorance because it lessoned [sic] the burden for the State to prove the mens rea for receiving stolen property." (Appt.'s Br. at 4).

Standard of Review

**{¶37}** "[T]he trial judge is in the best position to gauge the evidence before the jury and is provided the discretion to determine whether the evidence adduced at trial was sufficient to require an instruction." *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, ¶ 72. Thus, we generally review alleged errors in jury instructions for an abuse of discretion. *State v. Blanton*, 3d Dist. Marion, 2015-Ohio-4620, ¶ 55, citing *State v. Guster*, 66 Ohio St.2d 266, 271 (1981). An abuse of discretion occurs when a trial court's decision was unreasonable, arbitrary, or capricious. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

Analysis

**{¶38}** On the morning of the second day of trial, the prosecutor requested a supplemental jury instruction related to the "knowingly" element of RSP. The State sought an instruction pursuant to, *inter alia*, *State v. McNeal*, 8th Dist. Cuyahoga No. 91507, 2009-Ohio-3888, ¶ 26, which would state something similar to: "Deliberate ignorance. You can further find that the defendant acted knowingly if she deliberately closed her eyes to what she had reason to believe were the facts."

**{¶39}** Defense counsel objected and the trial court indicated it would wait to hear the testimony from the defense before it determined if any additional instruction on the element of "knowingly" was warranted.

**{¶40}** Following the presentation of the defense, the trial court allowed the parties to argue regarding the proposed additional jury instruction. After hearing the parties' arguments, the trial court indicated it would provide a supplemental instruction as requested. The jury was then instructed as follows with regard to the "knowingly" element:

> A person acts knowingly, regardless of his purpose when he is aware that his conduct will probably cause a certain result. A person has knowledge of circumstances when he is aware that such circumstances exist.
>
> Since you cannot look into the mind of another, knowledge is determined from all the fact [sic] and circumstances in evidence.
>
> * * *
> As to Count II, Receiving Stolen Property, you will determine from these facts and circumstances whether there existed at the time in the mind of the Defendant an awareness of the probability that the

-15-

property, the video games and consoles was obtained through the commission of a theft offense.

In determining whether the Defendant had reasonable cause to believe that * * * the other property described the [v]ideo games and consoles you must put yourself in the position of thi[s] Defendant with his knowledge or lack of knowledge under th[e] circumstances and conditions that surrounded him/her at that time. You must consider the conduct of the persons involved and determine whether their acts and words and all the surrounding circumstances would have caused a person of ordinary prudence and care to believe that those items were stolen.

You can further find that the Defendant acted knowingly if he deliberately closed his eyes to what he had reason to believe were the facts.

(Tr. at 317-318).

**{¶41}** Davis argues on appeal that the trial court abused its discretion by providing the supplemental instruction related to knowingly. He contends that the "alternative definition of knowledge negates the need for the State to prove mens rea." (Appt.'s Br. at 5).

**{¶42}** Initially, we note that this jury instruction has already been found to be appropriate when warranted by the evidence by the Eighth District Court of Appeals in *McNeal*, *supra*, and by the Fifth District Court of Appeals in *State v. Wiseman*, 5th Dist. Fairfield No. 2023 CA 00004, 2023-Ohio-4263, ¶ 41. Although the decisions from the Eighth and Fifth Districts, are only persuasive to the case before us, we find that the jury instruction provided herein was accurately reflective of the definition of "knowingly" provided in R.C. 2901.22(B).

-16-

{¶43} Revised Code 2901.22(B) reads in part: "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person * * * acts with a conscious purpose to avoid learning the fact." While instructing the jury with the phrase "deliberately closed his eyes to what he had reason to believe were the facts" is colloquial and not a word-for-word restatement of this portion of R.C. 2901.22(B), we find, at the very least, that it was not an abuse of discretion for the trial court to provide the instruction here. Therefore, Davis's first assignment of error is overruled.

*Fourth Assignment of Error*

{¶44} In his fourth assignment of error, Davis argues that he received ineffective assistance of counsel. Specifically, he contends that his counsel was ineffective for failing to object to the "inventory" lists provided by Joseph.

Standard of Review

{¶45} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, a defendant must establish that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice exists if there is "a reasonable probability that, but for counsel's errors, the outcome of the

proceeding would have been different." *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

Analysis

**{¶46}** At trial, the State introduced exhibits detailing the inventory that Joseph determined had been taken from his store. The inventory lists showed games and game systems and the values they were being sold for. Davis's trial counsel did not object to the introduction of the inventory lists.

**{¶47}** Davis now argues that his trial counsel was ineffective for failing to object to the introduction of the inventory lists because, he claims, the lists were not valid business records. However, Davis's trial strategy focused on the fact that while the games were stolen, he was completely unaware. If he was actually unaware, it would not have mattered how many games there were or how much they were valued at because he would not have been acting knowingly. Although the jury did not accept Davis's trial strategy, it does not establish any deficient performance. *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, ¶ 37 (2d Dist.) ("Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.").

**{¶48}** Moreover, even if trial counsel did object, and even if the inventory lists were excluded, there was still significant evidence establishing that the property

-18-

involved exceeded $1,000 in value. This includes Joseph testifying item by item as to the value of the games until the threshold amount was met. Thus there could be no prejudice here. Given that we do not find that either prong of the *Strickland* test is met here, Davis's fourth assignment of error is overruled.

*Conclusion*

{¶49} Having found no error prejudicial to Davis in the particulars assigned and argued, his assignments of error are overruled and the judgment of the Marion County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**