[Cite as *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| The State of Ohio, | : | Case No. 10CA3183 |
| Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Tyler, | : | **RELEASED 08/09/11** |
| Appellant. | : | |

_____
APPEARANCES:

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Richard W. Clagg, Assistant Prosecuting Attorney, for appellee.

Benson & Schmidt, L.L.P., and Jonathan D. Schmidt, for appellant.
_____

HARSHA, Presiding Judge.

{¶1} Jacob Tyler appeals his convictions for aggravated robbery and aggravated burglary. Tyler presents various arguments concerning a recording of a phone call made from the Ross County jail to the victim after his arrest. First, Tyler argues that the state failed to authenticate the recording. Although the state's effort at authentication was minimal at best, we hold that no abuse of discretion occurred in its admission. The victim testified that she received a call to her cell phone on a specific date and identified the caller as Tyler. And a deputy at the jail testified that he used this cell phone number to locate the recording of the phone conversation on the same date.

Second, Tyler argues that the court abused its discretion in admitting the recording into evidence because it was hearsay. We disagree because the recording—composed of Tyler's statements and the victims' responses or statements in which Tyler manifested his belief—constituted an admission, i.e., it was not hearsay. Third, Tyler argues that the court erred in allowing the jurors to listen to the recording twice during their deliberations, which Tyler argues placed undue emphasis on this piece of evidence. However, the trial court properly exercised its discretion in permitting the jurors to listen to the recording during deliberations, especially in light of evidence on record suggesting that the recording was difficult to understand when played during the trial.

{¶2} Finally, Tyler argues that both convictions were against the manifest weight of the evidence. Because the state presented substantial evidence of Tyler's guilt through the testimony of the victim of the robbery, who identified Tyler, and Tyler's own inculpatory statements on the recorded telephone conversation, substantial evidence supports his conviction.

## I. Summary of the Case

{¶3} The state charged Tyler with one count of aggravated robbery and one count of aggravated burglary, both with gun specifications. At trial, the state introduced the following evidence.

{¶4} Nicole Graves testified that in the early morning hours of March 22, 2009, she and her roommate Brook Michaels were applying makeup at a vanity in the entrance room to the home, preparing to go out for the night. Two men carrying long black guns and dressed in black came into the home through the unlocked but closed

entry door. Both men wore stockings on their faces; however, Graves immediately recognized one of the men as Tyler.

{¶5} Graves explained that she had known Tyler for six years, that they had been in a relationship, and that they were at one point engaged to be married. But Graves testified that Tyler did not live with her at the address of the robbery and did not have any clothing or other personal items there, and that she had not seen him for about a month prior to the events of March 22.

{¶6} Graves stated that Tyler pointed the gun at both her and her roommate and that it was either a shotgun or rifle. Initially, Graves believed that Tyler was joking. When he grabbed her purse, she realized he was not. Graves attempted to stop him from taking the purse; he responded by striking her in the jaw with what she believed was the butt of the gun. During this scuffle, Tyler pushed her into a television, causing a shoulder injury. At trial, the state introduced photographs depicting lacerations to Graves's chin and shoulder.

{¶7} The two men left, taking the purse with them. Because her cell phone was in the purse, Graves and Brooks went to a neighbor's residence and contacted the police. The two women spoke with officers from the Chillicothe police department and Graves gave police her written statement.

{¶8} It is unclear from the record, but it appears that several days later the Ross County sheriff's office recovered the purse and returned it to Graves. Some testimony suggested that Tyler turned the purse in himself on the same day of the incident. Graves testified that the purse was intact, although burnt and covered in oil.

She said that everything it contained, including her children's birth certificates, social security cards, and cash, was missing.

{¶9} After the state indicted and arrested Tyler, he allegedly placed a call from the Ross County jail to Graves's cell phone on April 26, 2009, and engaged her in a telephone conversation, which the jail recorded. Graves explained that at first she did not realize it was Tyler, but then she recognized his voice. Graves did not discuss the content of the conversation on either direct examination or cross-examination. Graves provided her cell phone number during this testimony.

{¶10} Under cross-examination, Graves admitted that she had just recently been convicted of two counts of aggravated trafficking and one count of identify theft. She denied that she had entered into any sentencing or plea agreement with the state in exchange for her testimony against Tyler.

{¶11} Detective Gay of the Chillicothe Police Department investigated the case. After reviewing the initial report made by an Officer Netter, he met with Graves at her home. He showed her a photo line-up that included Tyler's picture, and she identified Tyler as one of the men who robbed her.

{¶12} Gay admitted that he collected no evidence from the crime scene, although he obtained the recovered purse from Graves and took a picture of it. Gay also obtained a fingerprint sample and DNA swab from Tyler, which he sent to the Bureau of Criminal Investigations for comparison to a fingerprint obtained from Graves's recovered cell phone. It is unclear from the record, but apparently Tyler's fingerprint did not match the fingerprint on the cell phone. It is also not clear how or when Gay came into possession of the cell phone. Apparently, Officer Netter discussed the recovery of

the cell phone in his report, but Gay did not discuss the content of the report at trial. Gay also admitted that he did not attempt to obtain cell phone records during his investigation.

{¶13} Gay testified that Graves contacted him regarding Tyler's call from jail. In response, he went to the jail in April or May 2009 and interviewed Tyler. Gay did not testify concerning the content of this interview. Possibly in September 2009, Gay interviewed Tyler again. Gay stated that Tyler admitted that he took the purse but told him that he did not own a gun. Gay testified that he contacted Deputy Large at the Ross County jail to obtain a recording of Tyler's recorded phone conversation. Large provided him with a CD of the recording and he listened to it.

{¶14} Deputy Large testified that he maintained the telephone recording system at the Ross County jail. The jail records all phone conversations from 15 different phones in the facility. A company called "Securus" owned and provided the recording equipment on a contractual basis with the county. Large could access a password-protected client PC on the jail grounds for accessing the recorded conversations. He could search for a recording by date, time, number dialed, or specific phone within the jail.

{¶15} Large stated that Gay provided him with the cell phone number testified to earlier by Graves. He located the call in question, preserved it on a CD, kept the CD in his possession, and later provided it to Gay. Large also testified that the CD presented to him at trial was in fact the same CD he provided to Gay because he recognized his handwriting on it.

{¶16} After Large testified, the state indicated its intent to play the CD recording for the jury. Tyler objected, arguing that the state had failed to establish a foundation for the CD's authenticity. The trial court overruled the objection and allowed the state to play the recording, which lasts 11 minutes.

{¶17} As the call begins, an automated telephone operator requests the caller to identify him or herself. A male voice then spoke the name "Richard Johnson" or possibly "Ricky Johnson." When the line connected, Tyler greeted the responding female voice as Nicole. Graves then asks Tyler why he identified himself as Ricky Johnson. He does not respond to this question. He then tells Graves that "Netter" picked him up and that he is under indictment.

{¶18} The gist of the remaining conversation is Tyler ascertaining whether Graves intends to go to court against him, that the state's case against him is weak without her testimony, and how badly things may go for him and his child or children if she decides to assist the state in prosecuting him. Tyler is apologetic, offers to pay Graves back "for it," and explains that he was "[expletive] up" at the time of the incident. Later in the conversation, Graves becomes angry with Tyler after he continues to characterize himself as a victim. She tells him, "I'm not the one who pointed a gun in my face." Tyler offers no denial but explains that he was "[expletive] up" at the time and that he loves her. Later in the conversation, Graves says to Tyler, "You took my money, you took my purse." Tyler responds with "Man look, there isn't nothing you got I want to rob you for." Graves counters with "Then why'd you do it." Tyler does not respond to this, but states, "Nicole, I [expletive] love you."

**{¶19}** Tyler asks Graves if Brook Michaels is available to speak to him. When Michaels picks up the line, Tyler informs her that he has been arrested and explains, "I'm trying to make sure everything is going to follow through with y'all." Michaels does not respond and the call apparently ends at this point.

**{¶20}** Tyler opted not to present any evidence and rested at the conclusion of the state's case. He did, however, stipulate that he was present at Graves's home on March 22, 2009. For some perspective on this stipulation, one must consider Tyler's counsel's opening statement. In it, counsel essentially explained Tyler's competing version of events that evening. Tyler admits that he was at Graves's home and in fact took the purse. But his reason for doing so was that he got into a fight with her over an alleged addiction to pills. She wanted him to take her out that night, and he did not think it that was a good idea. He took the purse, which contained the pills, in order to prevent her from abusing them. Later, he realized that police were looking for him; so that same morning, he presented himself to police and turned the purse over.

**{¶21}** The jurors found Tyler guilty of both counts of the indictment, including the gun specifications. After the trial court sentenced him to an aggregate prison term of 18 years, he filed this appeal.

## II. Assignments of Error

**{¶22}** Tyler assign four errors for our review:

I. The trial court erred in permitting the jury to hear the recording and admitting it into evidence because it was not properly authenticated.

II. The trial court erred in admitting the recording into evidence because it was not a valid business record.

III. Even if this Court determines that the recording was properly played for the jury and admitted into evidence, the trial court erred in permitting the jury to replay the recording during deliberations more than once.

IV. The verdict was against the manifest weight of the evidence.

### III. Authentication of the Telephone Recording

**{¶23}** In his first assignment of error, Tyler contends that the trial court erred in allowing the state to play the telephone recording because it did not properly authenticate the recording, i.e., show that it was what the state claimed it to be, a genuine recording of the conversation between Tyler and the victims.

### A.  Standard of Review

**{¶24}** The decision to admit or exclude evidence rests within the trial court's sound discretion.  *State v. McGuire* (1997), 80 Ohio St.3d 390, 400-401, 686 N.E.2d 1112. Thus, a reviewing court will not reverse the trial court's decision absent an abuse of discretion.  *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 25, 514 N.E.2d 394. The term "abuse of discretion" implies that the court's attitude is unreasonable, unconscionable, or arbitrary. *State v. Adams* (1980), 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144. Furthermore, "[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181.

### B.  Minimal Authentication but No Abuse of Discretion

**{¶25}** Evid.R. 901 governs the authentication of demonstrative evidence such as recordings of telephone conversations.  The threshold for admission is quite low, as the proponent need only submit "evidence sufficient to support a finding that the matter in

question is what its proponent claims." Evid.R. 901(A). This means that "the proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be." *State v. Payton* (Jan. 25, 2002), Ross App. No. 01CA2606, 2002 WL 184922, at *3, citing *State v. Isley* (June 26, 1996), Summit App. No. 17485, 1996 WL 351154, citing *State v. Caldwell* (Dec. 4, 1991), Summit App. No. 14720, 1991 WL 259529. A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence. *State v. Williams* (1979), 64 Ohio App.2d 271, 274, 413 N.E.2d 1212.

**{¶26}** To be admissible, a sound recording of a telephone call must be "authentic, accurate, and trustworthy." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, at ¶ 109, citing *State v. Rogan* (1994), 94 Ohio App.3d 140, 148, 640 N.E.2d 535. Evid.R. 901 provides for two theories upon which a trial court might admit a sound recording. Giannelli, Evidence (3d Ed.2010) 409, Section 901.19. First, Evid.R. 901(B)(5) provides for authentication by voice identification "whether heard firsthand or through mechanical or electronic transmission or recording." Second, under Evid.R. 901(B)(9), a sound recording may be authenticated through evidence that demonstrates a process or system used that produces an "accurate result."

**{¶27}** After reviewing the record, we are concerned with the minimal effort made in this case to authenticate the recording of the phone conversation. Nonetheless, in light of the low threshold for authentication, we cannot conclude that the trial court abused its discretion by admitting the CD.

**{¶28}** Graves testified that Tyler called her cell phone on April 26, 2009, and that they had a conversation. She also provided her cell phone number. Graves explained

that she recognized Tyler's voice from past familiarity and that he identified himself to her during the phone call. Graves never testified about the content of the conversation. More troubling, she never testified that she listened to the recording of the phone conversation and confirmed that the recording accurately represented her conversation with Tyler.

**{¶29}** Detective Gay testified that on April 28, 2009, Graves contacted him concerning this call. In response, he contacted Deputy Large to obtain a recording of the telephone conversation. In return, Large provided him with a CD. Gay testified that he listened to the sound recording. But he did not testify as to his opinion concerning the identity of the voices in the sound recording.

**{¶30}** Deputy Large testified about the telephone recording system at the Ross County jail. He explained that Ross County contracted with Securus, which owned the recording system. It was his job to manage and retrieve recorded telephone conversations, and he could search the recordings using a password-protected "client PC" located on the jail premises. Detective Gay provided him with the same cell phone number that Graves had testified was her own. Large used the client PC to locate the phone call using Graves's cell phone number and then preserved the recording on a CD that he provided to Detective Gay. He testified that the CD in question was the same CD he provided to Gay because he recognized his handwriting on the CD, which bore the date of April 26, 2009, as well as Graves's cell phone number.

**{¶31}** With some reservations, we conclude that this foundational evidence considered as a whole was minimally sufficient to support the court's decision to admit the recording and play it for the jurors. The evidence was sufficient to establish that the

CD was what the state claimed it to be, i.e., an accurate recording of a telephone call made by Tyler from the Ross County jail to Graves and Michaels on April 26, 2009.

**{¶32}** As Tyler correctly points out, a troubling issue in this case is that no witness expressed their opinion concerning the identity of the voices on the *recording.* Likewise, no one verified that the Securus recording system accurately copies the original conversations.  We would be less critical of the state's efforts had it approached authentication in a more conscientious manner.  The state could have taken a few simple steps to establish a strong foundation of authenticity for this important piece of evidence.  For instance, the state could have simply asked Graves or Detective Gay whether they had listened to the recording and whether they had an opinion about the identity of the voices on the recording based on familiarity or remembrance.  And the state could have played the recording for Graves prior to trial and then asked her on the stand whether it was the same conversation she had on the phone with Tyler on April 26, 2009.  Barring that, Graves could have at least testified to the content of this conversation, which could have provided some degree of support to the conclusion that the recording was the same conversation.[1]

**{¶33}** Nonetheless, given the minimal threshold for authentication and the high degree of deference we must afford a discretionary decision, we cannot conclude that an abuse occurred in this case.  We hold that the foundational evidence submitted at trial was minimally sufficient to demonstrate that the recording was authentic under Evid.R. 901.  This assignment of error is meritless.

IV. The Recording Qualified as an Admission

---

[1] Her testimony would not be hearsay, as we will discuss later in this opinion.

{¶34} In his second assignment of error, Tyler argues that the trial court abused its discretion by admitting the telephone conversation under the hearsay exception for business records set forth in Evid.R. 803(6). Tyler's trial counsel raised this argument at the time the state formally offered the recording into evidence, i.e., after it had already been played for the jurors. Although not specifically addressing any issues of waiver, the trial court overruled the objection and found that the state had set forth sufficient foundational evidence to qualify the recording under the business-records hearsay exception.

{¶35} Although Tyler contends that the CD was not admissible as a business record, the general rule of appellate review provides that "[e]ven if a trial court has stated an erroneous basis for its judgment, a reviewing court will affirm the judgment if it is legally correct for another reason." *Jackson v. Ohio Bur. of Workers' Comp.* (1994), 98 Ohio App.3d 579, 585, 649 N.E.2d 30. Thus, even if we were to assume that the trial court erred by finding that the business-records exception applied to this recording, we conclude that the recording was admissible in any case as an admission.

{¶36} Under Evid.R. 801(D)(2)(a), statements of a party opponent are admissible as substantive evidence if offered against that party. Thus, Tyler's statements in the recording are admissions and are, by definition, not hearsay. Admissions by a party-opponent also include "the statements or questions to which [he] responds" if the failure to deny or correct the statement or question could be considered an adoption. *State v. Spires*, Noble App. No. 04 NO 317, 2005-Ohio-4471, at ¶ 38, citing *State v. Twitty*, Montgomery App. No. 18749, 2002-Ohio-5595. "A party may adopt the statement of a third person by failing to deny or correct under circumstances

in which it would be natural to deny or correct the truth of the statement." Giannelli, Evidence (3d Ed.2010) 161, Section 801.24; see also Evid.R. 801(D)(2)(b).

{¶37} Our review of the recording demonstrates that it can properly be characterized as a series of admissions. The recording consists principally of Tyler's own words and Graves's and Michael's statements or responses. Tyler manifested his adoption or belief in the truth of many of Graves's statements through silence or an evasive response. For instance, Graves stated, "I'm not the one who pointed a gun in my face" and "You hit me in the face with a [expletive] gun." Instead of flatly denying these accusations, Tyler offered apologies and explained that he was "[messed up]" at the time.

{¶38} We recognize that Tyler may not have adopted every statement by Graves and Michaels on the recording and that some statements may have been hearsay. However, Tyler does not point to any specifically objectionable portions of the recording. We apply nonconstitutional harmless-error analysis to evidentiary errors. *State v. McKnight,* 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 88; *State v. Conway,* 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, at ¶ 74. A nonconstitutional error is harmless when there is substantial other evidence to support the guilty verdict. *State v. Webb* (1994)*,* 70 Ohio St.3d 325, 335, 638 N.E.2d 1023. As we explain more fully in Section VI of this opinion, the state presented substantial evidence of Tyler's guilt through the victim's testimony and Tyler's admissions on the telephone recording. In the absence of a specific citation to a particularly prejudicial statement, we conclude that even if the admitted recording contained some objectionable hearsay that any error that occurred was harmless.

V. Jury Access to the Recording in Deliberations

**{¶39}** In his third assignment of error, Tyler contends that the court abused its discretion by giving the jurors the opportunity to play the telephone recording twice during deliberations. Essentially, Tyler is arguing that the trial court placed undue emphasis on this piece of evidence. Tyler admits that several Supreme Court cases support the proposition that no error occurs when a court permits jurors to view or listen to properly admitted evidence during deliberations for a second time. But Tyler urges us to treat this as an issue of first impression and conclude that allowing jurors to listen to this sound recording twice in deliberations, as opposed to once, constitutes error. The state contends that the record contains no evidence that the jurors actually played the recording more than once during deliberations and that the Supreme Court cases Tyler cites apply in its favor.

**{¶40}** Ohio courts follow the majority rule, which permits the replaying of video or audio exhibits during jury deliberations. *State v. McGuire* (1997), 80 Ohio St.3d 390, 396, 686 N.E.2d 1112; *State v. Loza* (1994), 71 Ohio St.3d 61, 79-80, 641 N.E.2d 1082 (per curiam); *State v. Clark* (1988), 38 Ohio St.3d 252, 257, 527 N.E.2d 844 (per curiam). "Sending properly admitted evidence into jury deliberations rests within the sound discretion of the trial judge." *McGuire* at 396. Tyler contends, however, that these Supreme Court cases hold or imply that jurors may listen to or view exhibits *once* during deliberations. To the contrary, *McGuire*, *Loza*, and *Clark* address only the general issue of whether an abuse of discretion occurs when the trial court determines that jurors should have access to sound recordings in deliberations. And these cases hold that no abuse occurred, at least under the circumstances present. These cases do

not address the specific number of times jurors listened to the recording during deliberation, nor do they address the specific number of times the trial court should permit jurors to replay the recordings.

**{¶41}** Regardless, we agree with the state that there is no evidence in the record that the jurors in this case actually listened to the sound recording during deliberations more than once, even though the trial court gave them the opportunity to do so. Moreover, we perceive no abuse of discretion in that decision. It is evident from the trial transcript that the Ross County courthouse suffers from poor acoustics and that at least one juror complained that he or she could not understand the recording when the state played it at trial. Listening to the recording ourselves confirms that the sound quality is poor and certain portions of the recording are difficult to understand. Thus, it is understandable that the trial court would deem it appropriate to allow the jurors to listen to the recording twice in their deliberations, merely to ensure that they understood what it contained. And giving jurors the opportunity to listen to the recording twice does not raise concerns that jurors might have placed undue emphasis on that piece of evidence. Thus, we find no abuse of discretion in this decision. This assignment of error is meritless.

## VI. Manifest Weight of the Evidence

**{¶42}** In his final assignment of error, Tyler contends that the jury's verdicts were against the manifest weight of the evidence. Tyler principally attacks Graves's credibility as well as the demonstrative evidence associated with her injuries. Tyler also presents arguments concerning witnesses who did not testify or the manner in which the Chillicothe Police Department investigated the case. The state contends that the

evidence supports the jury's verdicts because Tyler stipulated to being at Graves's residence on the night of the robbery, Graves testified that he robbed her, and Tyler admitted to the crimes in the telephone recording.

**{¶43}** "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve." *State v. Puckett*, Ross App. No. 10CA3153, 2010-Ohio-6597, at ¶ 32, citing *State v. Issa* (2001)*,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904; *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus. "If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence." Id. at ¶ 33, citing *State v. Eley* (1978), 56 Ohio St.2d 169, 383 N.E.2d 132, at syllabus (superseded by state constitutional amendment on other grounds). We will reverse a conviction only in the exceptional case in which the evidence weighs heavily against the conviction and it appears that the fact-finder, when resolving conflicts in the evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

**{¶44}** In count one, the state charged Tyler with aggravated robbery, which required the state to prove that Tyler, in attempting or committing a theft offense, had a

deadly weapon on or about his person or under his control  and either displayed the weapon, brandished it, indicated that he possessed it, or used it. R.C. 2911.01(A)(1).

**{¶45}** In count two, the state charged Tyler with aggravated burglary, which required the state to prove that Tyler, by force, stealth, or deception, trespassed in an occupied structure, when another person other than an accomplice of the offender was present and with purpose to commit in the structure any criminal offense.  In addition, the state was required to prove that Tyler had a deadly weapon on or about his person or under his control. R.C. 2911.11(A)(2).

**{¶46}** After reviewing the entire record of the trial, we conclude that this is not one of the rare cases in which the evidence weighs heavily against the jury's verdicts. Graves testified that Tyler, who did not live at her home and whom she had not seen for a month prior to the events at issue, entered it uninvited while brandishing a long black gun.  Graves stated that Tyler pointed the gun at her, took her purse, struck her in the face when she tried to prevent him from taking it, and pushed her into a television in the home.  The state corroborated the allegation of the assault with photographs admitted into evidence demonstrating lacerations on Graves's jaw and shoulder.

**{¶47}** The state additionally corroborated Graves's allegations of robbery and burglary with the telephone recording.  In it, Graves accused Tyler of pointing a gun at her face and taking her purse.  Tyler did not adamantly deny these accusations, as would be expected of an innocent person, but merely attempted to excuse his actions. Tyler's purpose in calling Graves was quite clear, however.  He wanted reassurance that she would not pursue the charges against him, which could have also indicated to jurors Tyler's guilt.

**{¶48}** In addition, Tyler stipulated that he was present at Graves's home that night. Thus, the jury merely needed to accept Graves's explanation for his presence at her home and the taking of her purse. This is a credibility determination that we leave to the jurors.

**{¶49}** Tyler argues that we should discount Graves's testimony because the pictures entered into evidence of her injuries depict slight lacerations, which Tyler suggests are inconsistent with her story of the assault. The jury, however, was free to make this observation themselves and determine whether the injuries depicted in the pictures aligned with Graves's testimony. Moreover, there was no medical evidence presented by either the state or the defense as to whether the injuries in the photographs were or were not consistent with the assault.

**{¶50}** Tyler additionally claims that Graves was impeached when she testified that Tyler did not live at her address but Officer Gay later testified that Tyler's state-issued identification card listed Graves's address. We fail to see how this matter impeaches Graves's testimony to the extent that no reasonable jury would be justified in believing her version of events. It is possible that Tyler listed Graves's address as his own at some point in the past and merely failed to update his identification card. And there was no evidence establishing when the state issued the identification card or what proof of residency would be required to list a specific address as one's own. Regardless, this was the only evidence that could possibly lead jurors to conclude that Tyler lived at Graves's residence, and its relative weight is minimal at best.

**{¶51}** Tyler also claims that Graves contradicted herself when describing the gun. Graves at first described the gun as a shotgun but then later said she was unsure

of the type of gun because the robbery took place so quickly. Again, we fail to see how Graves's problem identifying the type of gun used demonstrates that her other testimony should be disregarded. It is conceivable that a witness might not be able to specifically identify the type of gun used in a brief armed robbery and burglary.

{¶52} Tyler argues that we should view Graves's testimony as suspect because she admitted that she had recently pleaded guilty to a charge of trafficking and forgery involving identity theft. However, both the state and defense counsel examined this issue during Graves's direct examination and cross-examinations. The jurors were free to draw their own conclusions as to how this evidence affected the weight of her testimony.

{¶53} Tyler lists a litany of issues that principally address the absence of evidence or the allegedly deficient manner in which the state conducted its investigation. Many of these issues are not in the record and are thus not reviewable on direct appeal. For instance, Tyler points out that neither Michaels, a witness to the crime, nor Officer Netter, the initial investigating officer, testified. Of course, because neither testified, there is no way for us to consider how their testimony might have affected the weight of the evidence submitted at trial.

{¶54} Tyler also complains that the state failed to establish evidence explaining the recovery of the purse. Again, issues with the chain of custody of the purse are not in the record. Nonetheless, Graves testified that Tyler took the purse and that she received it later with items missing. The jury was free to accept or reject this testimony in determining whether the state met its burden of proving the theft element of the aggravated-robbery count.

{¶55} Finally, Tyler argues that Detective Gay obtained no search warrant, no cell phone records, and no fingerprint or DNA evidence during his investigation. There is no requirement that the state needs to accomplish these acts or perform forensic investigations to establish each element of a crime beyond a reasonable doubt. The absence of such evidence does not demonstrate that the jury lost its way in arriving at a finding of guilt.

{¶56} In sum, we conclude that Tyler's convictions for aggravated robbery and aggravated burglary are not against the manifest weight of the evidence. The state presented substantial evidence of each element of the crimes so that a reasonable fact-finder could have found Tyler guilty beyond a reasonable doubt. This assignment of error is meritless.

## VII. Conclusion

{¶57} Testimony that the victim received a call on her cell phone from Tyler and testimony from the deputy who retrieved the conversation from the jail recording system provided a minimally sufficient foundational basis for authenticating the recording, and thus no abuse of discretion occurred in its admission. The recording itself contained Tyler's admission and thus was not objectionable on hearsay grounds. And the trial court did not abuse its discretion in instructing the jurors that they could listen to the recording twice during their deliberations, as some evidence suggest that the recording was difficult to understand. Finally, Tyler's convictions are not against the manifest weight of the evidence. The state presented substantial evidence concerning each element of the crime through the testimony of the victim and Tyler's own inculpatory statements in the recording.

Judgment affirmed.

ABELE and MCFARLAND, JJ., concur.