[Cite as *State v. Glavic*, 2024-Ohio-209.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-L-064** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ALAN R. GLAVIC, JR., | |
| Defendant-Appellant. | Trial Court No. 2022 CR 000458 |

**O P I N I O N**

Decided: January 22, 2024
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Jerri Mitchell-Tharp,* P.O. Box 1126 Fairport Harbor, OH 44077 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Alan Glavic, Jr., appeals his convictions from the Lake County Court of Common Pleas. Following a jury trial, appellant was convicted on four counts: Aggravated Possession of Drugs, a fifth-degree felony, in violation of R.C. 2925.11; Possessing Criminal Tools, a fifth-degree felony, in violation of R.C. 2923.24; Aggravated Trafficking in Drugs, a third-degree felony, in violation of R.C. 2925.03(A)(1); and Aggravated Trafficking in Drugs, a fourth-degree felony, in violation of R.C. 2925.03(A)(1).

{¶2} Appellant has raised three assignments of error arguing: (1) the trial court violated appellant's right to confrontation and admitted inadmissible hearsay by allowing an investigator to testify about a statement made to him by a confidential informant who did not testify at trial; (2) the trial court erred by admitting jail call evidence without proper voice authentication; and (3) that his Aggravated Trafficking in Drugs convictions are against the manifest weight of the evidence.

{¶3} Having reviewed the record and the applicable caselaw, we find appellant's assignments of error are without merit. First, appellant's right to confront witnesses was not violated and the trial court did not improperly admit hearsay testimony where the investigator offered testimony intended to explain why he initiated his investigation. Next, the trial court did not err by admitting jail calls where the State offered substantial testimony as to the process by which those calls were recorded and kept, satisfying Evid.R. 901. Finally, appellant's convictions were supported by the manifest weight of the evidence where the evidence demonstrated that appellant sold drugs to a confidential informant on two occasions.

{¶4} Therefore, we affirm the judgment of the Lake County Court of Common Pleas.

**Substantive and Procedural History**

{¶5} On June 13, 2022, appellant was indicted on four drug-related counts arising from two drug buys completed by a confidential informant and a subsequent search of appellant's residence which yielded contraband.

{¶6} On April 25, 2023, the matter proceeded to jury trial. The following facts and evidence were adduced at trial:

2

{¶7} Deputy Joshua Babcock, formerly of the Lake County Narcotics Agency, testified about his involvement in a controlled operation to buy drugs from appellant. He said that,

A. I had a confidential informant inform me he could purchase meth –

[TRIAL COUNSEL]: Objection.

THE COURT: Overruled. Go ahead.

A. I had a confidential informant notify me he could purchase methamphetamine from Mr. Glavic. He told me that Mr. Glavic lived on Eastlake on three hundred thirty-second Street and he provided me a photo of Mr. Glavic.

{¶8} After this answer, the trial court conducted a side bar to ask the prosecutor whether this testimony would lead to any mention of appellant's prior record. The prosecutor said it would not. Next, the court said,

my overruling of that objection is because the Court finds it's not hearsay. It's being used to explain, not being used for the truth of the matter asserted, as to why they commenced this investigation and that's what the question was. How they commenced it; that's how they commenced it. It's being used for that purpose. Not for the truth of the matter asserted.

{¶9} Babcock's testimony continued, and he said he confirmed appellant's identity and residence based on the statement from the confidential informant, Louis Marconi. Babcock also explained that he had been unable to contact Marconi, who was not available to testify. He acknowledged that Marconi agreed to work as a confidential informant because he was hoping to receive a deal for pending criminal charges against him.

{¶10} On April 12, 2022, Babcock engaged in a controlled drug buy with the cooperation of Marconi. He said that Marconi told him he could buy one gram of methamphetamine from appellant for $40.00 at appellant's residence. Babcock met

3

Marconi at a pre-determined location, searched him and found no contraband or money on him. Babcock then gave him a recording device and $40.00 for the purchase. Babcock drove Marconi to appellant's residence and parked in the street in an unmarked vehicle.

{¶11} Babcock said that he watched Marconi walk up the driveway to appellant's residence and was also able to watch the live feed of his actions through the recording device. He said he saw Marconi meet appellant and conduct the controlled buy. He said Marconi was with appellant for "roughly six minutes." The two talked briefly and conducted the exchange. Babcock said there were no other people present during the exchange. After the exchange, Marconi walked back to the car and Babcock drove to a predetermined location to debrief.

{¶12} Babcock said that Marconi handed him the suspected methamphetamine while they were still enroute to the location. Babcock again searched Marconi and determined he had no other contraband or money.

{¶13} On April 21, 2022, Babcock and Marconi performed a second controlled drug buy. As with the first drug buy, Babcock searched Marconi and provided him with a recording device and money for the purchase. This purchase was to be 3.5 grams of methamphetamine for $80.00, commonly referred to as an "eight ball."

{¶14} Babcock drove an unmarked vehicle to appellant's residence and parked in the street in front of his driveway. Marconi walked up the driveway and waited outside. Appellant exited the residence and the two appeared to shove each other and argue. Appellant and Marconi were in a garage during the exchange. Babcock said no one else was present during the exchange. Marconi returned to the vehicle, handed the suspected

4

drugs to Babcock, and the two drove to a predetermined location to debrief. Babcock again searched Marconi and, again, found he had no other contraband or money.

{¶15} Babcock said that the recording devices the Lake County Narcotics Agency used did not always properly upload to the department's cloud storage. He said the video from the first controlled buy was not available and the video from the second controlled buy was "very choppy * * * because of the service issues we were having with the equipment." Babcock said that it was not possible to see the drug exchange on the video, but that Marconi left with $80.00 and returned with suspected drugs.

{¶16} Babcock said that after the two drug buys, he obtained a search warrant for appellant's residence, which he executed on April 27, 2022. Babcock said a search of appellant's bedroom revealed suspected methamphetamine and a digital scale on a dresser. The digital scale and dresser top were both covered with suspected drug residue. In the top drawer of the dresser, the search revealed $210.00, two boxes of sandwich baggies, and tin foil. Babcock said that in his experience, people who traffic in drugs will use digital scales and package the drugs in plastic baggies.

{¶17} After the search, police took appellant into custody and interviewed him at the Eastlake Police Department.

{¶18} Tyler Meader, of the Lake County Crime Laboratory, testified as to his analysis of the suspected methamphetamine. He tested four samples of suspected narcotics. The first sample yielded positive results for 0.085 grams of methamphetamine. The second sample yielded positive results for 3.09 grams of methamphetamine. The third sample was a digital scale which yielded positive results for methamphetamine and

5

Case No. 2023-L-064

cocaine residue. The fourth sample yielded positive results for 0.12 grams of methamphetamine.

{¶19} Detective Corey Svagerko, of the Lake County Sheriff's Office testified that he obtained jail phone calls associated with the inmate personal identification number assigned to appellant while he was in the Lake County Jail. He said that the PIN assigned to inmates is a unique number that inmates must enter before making phone calls from the jail. Svagerko said that he identified appellant's PIN and put the recorded calls using that PIN on a disc for trial. The court asked appellant's trial counsel if there was any objection to playing the recordings for the jury and counsel responded: "No grounds for objection, Your Honor."

{¶20} Svagerko played three outgoing calls from the PIN associated with appellant's inmate number. The first call occurred on May 22, 2022, the second call occurred on June 14, 2022, and the third call occurred on June 15, 2022. During the first call, the caller spoke to an unknown woman and said, "I put myself in this mess."

{¶21} During the second call, the caller spoke to his mother. The woman on the call referred to the caller as Al. The caller said he had been indicted for drug trafficking and that he had been arrested because an unnamed individual "wore wires on me."

{¶22} During the third call, the caller spoke with an unidentified woman. The caller said that he had been indicted for a "three and a four and a five and a five" because of what the police "found at the house in the controlled buys * * * and the dude that wore the wire. April 12th * * * and April 21st."

{¶23} Appellant's trial counsel asked clarifying questions about some of the statements during the calls and acknowledged that the jail caller was appellant.

6

{¶24} The jury found appellant guilty on all counts. On May 15, 2023, the trial court sentenced appellant to 11 months on Count 1 and 11 months on Count 2, to be served consecutively. The court sentenced appellant to 18 months on Count 3 and 12 months on Count 4, to be served concurrent to each other and consecutive to Counts 1 and 2. In total, the trial court ordered appellant to serve a prison term of 40 months.

{¶25} Appellant timely appealed raising three assignments of error.

### Assignments of Error and Analysis

{¶26} Appellant's first assignment of error states:

{¶27} "[1.] THE TRIAL COURT VIOLATED THE DEFENDANT-APPELLANT'S CONSTITUTIONAL RIGHT TO FAIR TRIAL, DUE PROCESS, AND CONFRONTATION, AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN IT ADMITTED INADMISSIBLE HEARSAY TESTIMONY."

{¶28} Appellant raises two related issues under this assignment of error. First, he argues that the trial court violated his right to confrontation by not affording him the opportunity to confront Marconi about his testimonial statements that Babcock recited during his testimony. Second, appellant argues the trial court erred by characterizing Babcock's testimony about Marconi as framing testimony rather than inadmissible hearsay and argues that such testimony was more prejudicial than probative under Evid.R. 403.

{¶29} Under both the United States and Ohio Constitutions, a criminal defendant has a right to confront witnesses. The Sixth Amendment's Confrontation Clause, which is binding on the states through the Fourteenth Amendment, provides: "In all criminal

7

prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." Article I, Section 10 of the Ohio Constitution states that "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face." "'While these constitutional provisions are not identical, the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment.'" *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12, quoting *State v. Self,* 56 Ohio St.3d 73, 79, 564 N.E.2d 446 (1990). Article I, Section 16 of the Ohio Constitution provides "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

**{¶30}** Confrontation Clause violations are subject to harmless error analysis. *State v. Edwards*, 11th Dist. Lake No. 2012-L-034, 2013-Ohio-1290, ¶ 27. "'A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt.'" *Id.*, quoting *State v. Conway,* 108 Ohio St.3d 214, 842 N.E.2d 996, 2006–Ohio–791, ¶ 78, citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**{¶31}** The right to confrontation applies to all testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). "[T]he admission of a testimonial hearsay statement made by a declarant who does not testify at trial violates the Sixth Amendment unless (1) the declarant is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 173, citing *Crawford* at 68. "The proper inquiry for determining the testimonial nature of a statement is 'whether a reasonable person in the

8

declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *State v. Metter*, 11th Dist. Lake No. 2012-L-029, 2013-Ohio-2039, ¶ 35, quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004).

{¶32} However, the "Confrontation Clause does not prohibit the introduction of all out-of-court testimonial statements by witnesses who are unavailable and have not been subject to confrontation." *State v. Lewis*, 1st Dist. Hamilton No. C-050989, 2007-Ohio-1485, ¶ 41. *Crawford* held that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford* at 59, fn. 9. Where an officer's testimony about an unavailable declarant's testimonial statement is "not offered to prove the truth of the matter asserted" it does not violate the defendant's right to confront witnesses. *State v. Ricks,* 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 18.

{¶33} "[E]xtrajudicial statements made by out-of-court declarants offered to explain the subsequent investigative conduct of law enforcement are generally admissible, because the statements are not offered to prove the truth of the matter asserted." *State v. Burton*, 2017-Ohio-322, 77 N.E.3d 449, ¶ 21 (4th Dist.), citing *Ricks* at ¶ 18. Where the testimony at issue is offered to "'explain the subsequent investigative activities of the witness'" and not offered to prove the truth of the matter asserted, it does not violate a defendant's right to confront witnesses. *Ricks* at ¶ 20, citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980).

{¶34} This court has held that whether evidence constitutes inadmissible hearsay is a question of law subject to de novo review. *Morford v. Morford*, 2018-Ohio-3439, 118

9

N.E.3d 937, ¶ 12 (11th Dist.). "Determining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard of review." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. This is because Evid.R. 802 specifically provides that "hearsay is not admissible." Therefore, "the trial court's decision to admit hearsay is not governed by the test of abuse of discretion, which the Supreme Court applies to instances where the trial court's evidentiary rulings relate to matters expressly or implicitly within its discretion, as in rulings on relevancy (Evid.R. 402 and 403) or expert testimony (Evid.R. 702)." *State v. Sorrels*, 71 Ohio App.3d 162, 165, 593 N.E.2d 313 (1st Dist.1991).

{¶35} We review the trial court's decision relating to hearsay "in light of Evid.R. 103(A) and the standard established in Crim.R. 52(A), providing that such errors are harmless unless the record demonstrates that the errors affected a party's substantial right." *Id.*

{¶36} Hearsay is defined as a "statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶37} Evid.R. 403(A) provides that the exclusion of relevant evidence is discretionary if its probative value is "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶38} Here, there is no question that Marconi was unavailable and that appellant did not have a prior opportunity to cross-examine him. Further, Marconi's statements to

10

Babcock about appellant selling methamphetamine were certainly statements that a reasonable person in Marconi's position would anticipate being used against appellant in his prosecution. Thus, appellant is correct that Marconi's statements were testimonial. *See Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (Statements are testimonial where made when there is no ongoing emergency and the result of a police interrogation whose "primary purpose [was] to establish or prove past events potentially relevant to later criminal prosecution."). However, that does not end the inquiry. This is because Babcock's testimony about Marconi's testimonial statements was merely offered to explain his subsequent investigative conduct, such as engaging in multiple controlled drug buys, and executing a search warrant at appellant's residence. The trial court explained its ruling allowing the testimony in these terms. We agree and conclude that the trial court did not violate appellant's right to confront witnesses under the Confrontation Clause.

{¶39} Appellant also argues that Babcock's testimony about Marconi's statement was inadmissible hearsay which was more prejudicial than probative. However, this testimony was not offered for the proof of the matter asserted. Further, the probative value of the testimony framing why Babcock began his investigation was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Babcock's testimony about Marconi's statements was brief and incidental to the investigative work that Babcock personally engaged in and observed.

{¶40} Accordingly, appellant's first assignment of error is without merit.

{¶41} Appellant's second assignment of error states:

11

{¶42} "[2.] THE DEFENDANT-APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING UNAUTHENTICATED RECORDINGS UNDER EVID.R. 901."

{¶43} Appellant argues that the trial court erred by admitting the jail calls into evidence. Appellant concedes that there was no deficiency in the accuracy of the recordings, but argues that the State failed to authenticate who was speaking. He argues that Svagerko's testimony about the calls originating from a unique PIN associated with appellant's inmate number was insufficient to authenticate the calls.

{¶44} Ordinarily, the determination to admit or exclude evidence lies within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Miller*, 11th Dist. Trumbull No. 2014-T-0061, 2015-Ohio-956, ¶ 14. However, despite the trial court's explicit inquiry into whether he had any objection to the admission of the jail calls, trial counsel said, "[n]o grounds for objection, Your Honor."

{¶45} Because appellant did not raise this issue below, "under the circumstances of this case, appellant has forfeited all but plain error on review." *State v. Carnes*, 11th Dist. Trumbull No. 2014-T-0120, 2015-Ohio-4429, ¶ 8. "Crim.R. 52(B) affords appellate courts discretion to correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. The appellant bears the burden of demonstrating plain error by proving

12

Case No. 2023-L-064

that the outcome would have been different absent the plain error. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 17. The plain error must be a deviation from a legal rule and an obvious defect in the proceedings. *Rogers* at ¶ 22.

**{¶46}** Further, even when the error is obvious, "it must have affected substantial rights," meaning "'that the trial court's error must have affected the outcome of the trial.'" *Id.*, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). This is the same deferential standard applied for "reviewing ineffective assistance of counsel claims." *Id.* Indeed, "even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it * * *." *Id.* at ¶ 23. Courts are cautioned "to notice plain error 'with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶47}** Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "'This low threshold standard does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be.'" *State v. Miller*, 11th Dist. Trumbull No. 2014-T-0061, 2015-Ohio-956, ¶ 21, quoting *State v. Easter*, 75 Ohio App.3d 22, 25, 598 N.E.2d 845 (4th Dist.1991); Giannelli, Ohio Evidence Manual (1990) 6, Section 901.01. Authenticity may be demonstrated through direct or circumstantial evidence. *State v. Jaskiewicz*, 11th Dist. Trumbull No. 2012-T-0051, 2013-Ohio-4552, ¶ 12.

13

**{¶48}** Evid.R. 901(B)(1) provides, by way of illustration, that testimony from a witness with knowledge that a matter is what it is claimed to be is sufficient to authenticate evidence. The proponent of the evidence need only demonstrate a "reasonable likelihood" that the evidence is authentic. *Jaskiewicz* at ¶ 14, citing *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 30.

**{¶49}** *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 573 N.E.2d 98 (1991) describes the authentication of pictures and video recordings through two means: (1) the "pictorial testimony theory," and (2) the "silent witness theory." *Id.* at 129-130. Under the pictorial evidence theory, the sponsoring witness testifies as to the accuracy of the video based on the witness' own observation of the recorded events. *Id.* Thus, the video is "'merely illustrative'" and "'only becomes admissible when a sponsoring witness can testify that it is a fair and accurate representation of the subject matter, based on that witness' personal observation.'" *Id.* at 129, quoting *Fisher v. State,* 7 Ark. App. 1, 643 S.W.2d 571, 573-574 (Ark.App.1982). Under the "silent witness theory," the evidence "speaks for itself" and "may be admitted upon a sufficient showing of the reliability of the process or system that produced the evidence. McCormick, Evidence (3 Ed. Cleary Ed.1984) 672, Section 214." *Id.* at 130.

**{¶50}** Evid.R. 901(B)(1-10) provides a non-exhaustive list of examples of authentication conforming with the requirements of the rule, including three primary ways to authenticate audio recordings. First, in cases dealing with audio only recordings the "pictorial testimony theory" described in M*idland Steel* may appropriately be called an "auditory testimonial theory," where a sponsoring witness may authenticate an audio recording because the witness testifies as to the accuracy of the audio recording based

14

on the witness' own observation of the recording. *See Id;* Evid.R. 901(B)(1). Second, Evid.R. 901(B)(5) provides that authentication may be accomplished through voice identification. Under this section, a sponsoring witness need not have overheard the audio recording at the time it was made. Instead, the sponsoring witness must be able to identify the voice on the audio recording. *State v. Guyton*, 2016-Ohio-8110, 74 N.E.3d 939, ¶ 36 (11th Dist.). Third, Evid.R. 901(B)(9) provides for the "silent witness theory" as described above. It provides that authentication may also be accomplished through "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." Therefore, "a sound recording may be authenticated through evidence that demonstrates a process or system used that produces an 'accurate result.'" *State v. Maurent*, 5th Dist. Delaware No. 12 CAA 05 0055, 2013-Ohio-3799, ¶ 50, citing *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 26 (4th Dist.). Here, appellant has not demonstrated the trial court committed plain error by admitting the jail calls. The State presented sufficient evidence as to the process or system used to produce the jail phone calls associated with appellant's unique PIN to establish a reasonable likelihood that the recordings were authentic. Whether the voice on the recordings was in fact appellant's was a question for the jury to decide. *See State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 32.

{¶51} Accordingly, appellant's second assignment of error is without merit.

{¶52} Appellant's third assignment of error states:

{¶53} "[3.] THE JURY ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT RETURNED A VERDICT OF GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

15

**{¶54}** Appellant argues that his convictions were against the manifest weight of the evidence.

**{¶55}** When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.* The reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

**{¶56}** The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.*,

16

quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus.

{¶57} A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶58} Appellant's arguments only address his convictions for Aggravated Trafficking in Drugs, we therefore limit our discussion to the controlled drug buys on April 12 and April 21.

{¶59} R.C. 2925.03(A)(1) provides that no person shall knowingly "Sell or offer to sell a controlled substance or a controlled substance analog[.]"

{¶60} Both controlled drug buys were monitored by officers with the Lake County Narcotics Agency. Babcock testified that he coordinated both controlled drug buys with the assistance of Marconi. Babcock searched Marconi before each controlled buy to confirm he had no weapons, drugs, or money on him. During both controlled buys, Babcock provided Marconi with the agreed upon amount of money to complete the transaction. Babcock parked his car on the street in front of appellant's house and monitored the transaction from the street. He also had the ability to monitor the transactions over the live feed of the recording device he gave to Marconi.

{¶61} Although the recording from the April 12 drug buy was lost, Babcock testified that the entire exchange lasted approximately six minutes and said that he

17

watched as Marconi approached appellant's front door where he made the purchase and returned to the car where Marconi gave Babcock the methamphetamine he purchased. Babcock said that Marconi did not have any money or additional contraband on him when he returned.

{¶62} The video recording of the second drug buy was choppy in places, and the actual exchange of the money and drugs was not visible on camera. However, the video depicts Marconi and appellant talking for several minutes and does not depict Marconi engaging in any other activity that would suggest he acted contrary to Babcock's instructions. Again, Marconi left with money for the purchase and returned with the agreed upon amount of methamphetamine.

{¶63} Finally, the jail calls associated with appellant's PIN contain evidence which a jury could rely on to conclude he was guilty of trafficking in drugs. The caller's mother called him "Al," the caller identified that someone had worn a wire on him on April 12 and April 21, and the caller acknowledged that he "put himself in this mess." This evidence provides additional support for the conclusion that appellant's convictions for selling methamphetamine in violation of R.C. 2925.03(A)(1) were supported by competent and credible evidence. Although Marconi was not available to testify, the greater amount of credible evidence at trial supports the convictions for each drug buy. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶64} Accordingly, appellant's third assignment of error is without merit.

Case No. 2023-L-064

{¶65} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, P.J.,

ROBERT J. PATTON, J.,

concur.

19