**[Cite as *State v. Bonerigo*, 2025-Ohio-1809.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-61 |
| | : | |
| v. | : | Trial Court Case No. 24-CR-0223 |
| | : | |
| FRANCIS BONERIGO | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 21, 2025

. . . . . . . . . . .

STEVEN H. ECKSTEIN, Attorney for Appellant

ROBERT C. LOGSDON, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Francis Bonerigo appeals from his conviction on one count of domestic violence, a third-degree felony.

{¶ 2} Bonerigo contends his conviction was against the manifest weight of the evidence because it depended on hearsay.

{¶ 3} For the reasons set forth below, we conclude that the weight of the evidence supported the conviction. Accordingly, the trial court's judgment will be affirmed.

## I. Background

{¶ 4} A grand jury indicted Bonerigo on charges of domestic violence and strangulation. The charges stemmed from his girlfriend's allegations that he had hit her and had choked her with a wooden club.

{¶ 5} The case proceeded to an August 14, 2024 jury trial. The first witness, a representative of the Clark County Communication Center, authenticated a recording of the victim's 911 call to police. During the call, the victim reported that Bonerigo had hit her with a club and had strangled her with it. She requested a police response before he hurt her again.

{¶ 6} The next witness was Springfield police officer Brandon O'Neil. He responded to the 911 call at a residence Bonerigo and the victim shared. O'Neil described the victim as "crying," "distraught," and "visibly upset." She reported that Bonerigo had hit her and had choked her.

{¶ 7} Springfield police officer Ryan Householder also arrived at the scene in response to the 911 call. After helping to secure Bonerigo in a police cruiser, Householder spoke to the victim. She reported that Bonerigo had struck her in the face before hitting her in the leg with a club and holding the club against her throat in a bedroom. Householder described the victim as "crying," "distraught," and in pain. He also identified pictures he had taken of the victim's neck and leg. In Householder's presence, the victim completed and signed a domestic-violence form describing what had occurred.

{¶ 8} The fourth witness was Springfield detective Brian Melchi. He authenticated recordings of three jailhouse phone calls that Bonerigo made to the victim after his arrest. During the calls, the victim accused him of punching her, hitting her leg, and choking her. In one of the calls, Bonerigo explained that he had "snapped." During the third call, the victim assured Bonerigo that she would not testify against him in court.

{¶ 9} The final witness was the victim, who was called to testify by the trial court rather than the prosecution. On questioning from the prosecutor, the victim acknowledged that Bonerigo was her boyfriend and that she resided with him. When asked about the events at issue, the victim initially pled the Fifth Amendment. She explained that her testimony "could be incriminating to somebody else." She claimed a right not to testify against Bonerigo even though they were not married.

{¶ 10} After the trial court rejected her Fifth Amendment argument, the victim professed not to remember anything about the events in question. She claimed not to remember whether she had called the police or whether she had made allegations to them. She also initially denied having any jailhouse phone conversations with Bonerigo. Despite the testimony of officers O'Neil and Householder that they had not detected any odor of alcohol on the victim, she claimed that she had been heavily intoxicated at the time in question. She described the entire day as "a blank." On further examination by the prosecutor, the victim acknowledged her voice on one of the jailhouse recordings in which she accused Bonerigo of hitting and choking her. The State rested following the victim's testimony, and the defense did not present any evidence.

{¶ 11} The jury found Bonerigo guilty of third-degree-felony domestic violence but

not guilty of strangulation. The trial court imposed a three-year prison sentence. This appeal followed.

## II. Analysis

{¶ 12} The sole assignment of error states:

THE JURY VERDICT OF GUILTY TO DOMESTIC VIOLENCE IS AGAINST

THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 13} Bonerigo acknowledges that the victim accused him of hitting her in a 911 call, when speaking to responding officers, and in jailhouse phone conversations. Given the victim's refusal to testify against him at trial, however, Bonerigo contends his conviction based on "hearsay" statements was against the weight of the evidence.

{¶ 14} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶ 15} With the foregoing standards in mind, we conclude that Bonerigo's domestic-violence conviction was not against the weight of the evidence. Recordings of

911 calls frequently are admitted at trial as excited utterances or under other exceptions to the hearsay rule. *State v. Smith*, 80 Ohio St.3d 89, 107 (1997). The same is true of statements made by victims to police officers or others shortly after a crime. *State v. Beasley,* 2018-Ohio-493, ¶ 179-180. In addition, statements made by defendants in jailhouse phone calls are not hearsay and are admissible as admissions of a party opponent. *State v. Tyler*, 2011-Ohio-3937, ¶ 36 (4th Dist.). Finally, accusations made by victims against defendants in such calls may be admissible as adoptive admissions. *Id.* "A defendant may demonstrate his adoption of a non-party's out-of-court statement through his demeanor, conduct, words, or even silence." *State v. Gibson*, 2010-Ohio-1121, ¶ 15 (2d Dist.) (finding an adoptive admission during a jailhouse phone conversation where the defendant failed to deny allegations of "smacking" the victim).

**{¶ 16}** Here defense counsel raised no hearsay objection when the State introduced evidence of the victim's 911 call, the allegations she made to responding officers, or the jailhouse phone calls. Defense counsel likely failed to object because the foregoing evidence was admissible—either as non-hearsay or under an exception to the hearsay rule. Even on appeal, Bonerigo does not argue that any of this evidence was inadmissible. He simply contends the victim's refusal to testify against him rendered his conviction against the weight of the evidence.

**{¶ 17}** We find Bonerigo's argument to be unpersuasive. The jury convicted him of violating R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." At trial, the victim testified that Bonerigo was her boyfriend and that they were cohabiting, making her a household

member. The victim did not deny her earlier abuse allegations or testify that he had not harmed her. Rather, she professed no recollection of what had occurred. Against this testimony, the State presented evidence of the victim's 911 call, her statements to responding officers, and the jailhouse phone calls. In its role as trier of fact, the jury was entitled to credit this evidence and to find that Bonerigo knowingly had caused physical harm to the victim by punching her and/or hitting her with a wooden club. In finding Bonerigo guilty, the jury did not clearly lose its way or create a manifest miscarriage of justice. This was not an exceptional case in which the evidence weighed heavily against the conviction. Accordingly, the assignment of error is overruled.

### III. Conclusion

{¶ 18} The judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HANSEMAN, J., concur.